189 Cal.App.4th 118 (2010)
116 Cal. Rptr. 3d 545
In re JONAH D. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent,
v.
RACHEL D., Defendant and Appellant.
No. B222549.
Court of Appeals of California, Second District, Division One.
September 10, 2010.
*120 Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.
Andrea Sheridan Ordin, County Counsel, James M. Owens, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

OPINION
JOHNSON, J.
Mother Rachel D. (Mother) appeals an order terminating her parental rights to her son J.D. pursuant to Welfare and Institutions Code section 366.26.[1] She contends notice was inadequate under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). We affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On May 1, 2008, the Los Angeles County Department of Children and Family Services (Department) responded to a referral from Kester Elementary School that eight-year-old J.D. and his older sister Ja.D. were the victims of general neglect. J.D. told the social worker that Mother had hit him with a belt in the past, and that Mother used physical discipline consisting of her open palm and her fists. The day before, Mother had struck J.D. on the back. The social worker observed bruises and contusions on J.D.'s arm and back, and a scratch on his arm from Mother's fingernail. The school's principal reported that Mother had recently enrolled the children without documentation and cursed at school personnel, informing them that a very wealthy person searched for her and paid people to follow her. When interviewed at the police department, Mother denied abusing the children. She made several statements indicating she was paranoid, such as "`I'm being followed right *121 now,'" and "`my cell phone has always been tapped.'" J.D. and Ja.D. were detained. The Department reported that the location of J.D.'s father, Adam C., was unknown, and Mother did not know the identity of the father of Ja.D.
The section 300 petition filed May 6, 2008, regarding both children alleged serious physical harm, failure to protect, no provision for support, and abuse of sibling. (§ 300, subds. (a), (b), (g) & (j).) The children were ordered detained and placed in foster care. Mother and Adam C. were given reunification services.
On July 11, 2008, the dependency court sustained the petition as to all counts except the section 300, subdivision (g) count. The court warned Mother that if substantial progress was not made with reunification and custody of the children returned to her, parental rights would be terminated in July 2009.[2]
In January 2009, the Department reported that Mother had been attending individual counseling, family therapy, and had completed a parenting class. She had monitored visits with the children twice a week. The children were doing well in their foster homes.
On January 25, 2009, Mother abducted the children from a scheduled weekend visit. The Department requested a protective custody warrant pursuant to section 340. On January 28, 2009, Mother and the children remained missing, and the dependency court issued a protective custody warrant for the children and an arrest warrant for Mother.
On February 23, 2009, Mother was arrested in Miami when she got into an altercation with her roommate in which she tried to attack the roommate with a hammer. Police responded and discovered the outstanding warrants. On March 4, 2009, after Mother and the children were returned to California, the court recalled the warrants.
On March 19, 2009, the Department filed a section 342 petition based upon Mother's abduction of the children and her attack on her roommate, alleging a danger to the children's physical and emotional safety under section 300, subdivision (b).
After an April 24, 2009 pretrial resolution conference, the court set the matter for an adjudication hearing on May 26, 2009. The Department's report prepared for the hearing stated that although Mother was in compliance with *122 her reunification plan, she continued to struggle with paranoid behaviors. The Department recommended a psychological evaluation. Further, Mother had been arraigned on kidnapping charges and charged with two felony counts of child abduction. The Department recommended reunification services be terminated due to Mother's abduction of the children and unresolved psychological issues.
At the May 26, 2009 hearing, the court ordered the Department to initiate an Interstate Compact on the Placement of Children (ICPC) (Fam. Code, § 7900 et seq.) for the placement of the children with their maternal aunt and maternal grandmother. On July 7, 2009, at the 12-month review hearing, the court terminated reunification services for Adam C. The court set a section 366.26 hearing for October 26, 2009.
The Department's section 366.26 report stated that a prospective adoptive parent, the children's maternal grandmother Ms. B., who lived in Illinois, had been identified. Mother had no clinical psychological diagnosis, but could be argumentative, highly suspicious, and angry in her behavior. On October 26, 2009, the court found it had no reason to know the children would fall under ICWA and continued the hearing.
On November 17, 2009, the Department filed a section 388 petition alleging that on October 30, 2009, Mother attempted to abduct the children from their maternal grandmother at knifepoint. Mother was incarcerated in Illinois. The Department asked that no further visitation be permitted between Mother and the children. At the November 25, 2009 hearing, the court granted hearing on the petition and set the matter for December 8, 2009, in connection with the section 366.26 hearing.
The Department's section 366.26 report stated that the children were placed with the maternal grandparents in Illinois. Mother remained incarcerated in Illinois on December 8, 2009, the scheduled date of the section 366.26 hearing. The court granted the section 388 petition on an interim basis and continued the section 366.26 hearing. On December 10, 2009, the court ordered no contact between Mother and the children pending the section 366.26 hearing scheduled for February 1, 2010.
On February 1, 2010, the court held a contested section 366.26 hearing. At the hearing, Mother requested the court apply the beneficial relationship exception to the terminating of parental rights of section 366.26, subdivision (c)(1)(B)(i). The court found by clear and convincing evidence the children were adoptable and that no exceptions to adoption applied. The court stated that although Mother had regularly visited with the children, her conduct towards them was detrimental and the stability they would have in an *123 adoptive home outweighed any benefit to continuing their relationship with Mother. The court terminated Mother's parental rights, identified adoption as the permanent plan, and ruled the section 388 petition was moot.

DISCUSSION
Mother contends that the dependency court erred when it concluded that there was no reason to know the children would fall under ICWA. She contends the matter must be remanded for proper notice to ICWA.

A. Factual Background

On May 6, 2008, the court found Mother does not have any Native American heritage. In connection with the section 366.26 hearing, the Department noted that the court had made no ICWA findings as to J.D.'s father. The Department spoke to Adam C.'s mother Claudia C., who told the social worker that she had been informed by her own maternal grandmother that Claudia had Native American ancestry, but Claudia did not know whether it was from her maternal grandmother or maternal grandfather, advising the Department that "I can't say what tribe it is and I don't have any living relatives to provide any additional information. I was a little kid when my grandmother told me about out Native American ancestry but I just don't know which tribe it was." Claudia C.'s relatives did not live on a reservation or attend an Indian school, but lived on a farm in Arkansas. At the October 26, 2009 section 366.26 hearing, the court found it had no reason to know that J.D. would fall under ICWA.

B. Discussion

(1) ICWA was enacted to protect the rights of Indian children and tribes. (Mississippi Choctaw Indian Band v. Holyfield (1989) 490 U.S. 30, 37 [104 L.Ed.2d 29, 109 S.Ct. 1597].) "`Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe . . . ." (25 U.S.C.A. § 1903(4).) Under ICWA, a party seeking foster care or termination of parental rights must notify an Indian child's tribe of the pending proceedings and of its right to intervene. (25 U.S.C.A. § 1912(a).) The notice provision applies if "the court knows or has reason to know that an Indian child is involved . . . ." (Ibid.) ICWA does not require inquiry where no evidence of Indian ancestry is presented. (In re Noreen G. (2010) 181 Cal.App.4th 1359, 1386 [105 Cal.Rptr.3d 521].) However, section 224.3, subdivision (a) provides a continuing duty in dependency proceedings to inquire whether a child might be an Indian child. (Noreen G., at p. 1386.)
*124 If the notice duty is triggered under ICWA, the notice to a tribe must include a wide range of information about relatives, including grandparents and great-grandparents, to enable the tribe to properly identify the children's Indian ancestry. (In re C.D. (2003) 110 Cal.App.4th 214, 225 [1 Cal.Rptr.3d 578].) Any violation of this policy requires the appellate court to vacate the offending order and remand the matter for further proceedings consistent with ICWA requirements. (In re Jonathan D. (2001) 92 Cal.App.4th 105, 111-112 [111 Cal.Rptr.2d 628].) On remand, the juvenile court must receive a tribal determination regarding the children's Indian ancestry before continuing the termination and placement proceedings. (Ibid.)
(2) The circumstances under which a dependency court has reason to know a child is an Indian child are set forth in California Rules of Court, rule 5.481(a)(5), and include, as relevant here, where "[t]he child or a person having an interest in the child, including an Indian tribe, an Indian organization, an officer of the court, a public or private agency, or a member of the child's extended family, informs or otherwise provides information suggesting that the child is an Indian child to the court [or] the county welfare agency . . . ." (Italics added.)[3] In In re O.K. (2003) 106 Cal.App.4th 152 [130 Cal.Rptr.2d 276], the children's grandmother, who was not enrolled as the member of any tribe, informed the court that one of the children "may have Indian in him. I don't know my family history that much, but where [we're] from it is that [area of the country] so I don't know about checking that." The grandmother was not able to identify a particular Indian tribe or nation. (Id. at p. 155.) The court found this insufficient to trigger the notice requirements of ICWA because the information provided by the child's grandmother was "too vague and speculative to give the juvenile court any reason to believe the minors might be Indian children." (O.K., at p. 157.) In In re Levi U. (2000) 78 Cal.App.4th 191 [92 Cal.Rptr.2d 648], the child's paternal grandmother indicated she might have Indian ancestry on her mother's side, although her mother, who was born on a reservation in Oklahoma, was deceased, and the grandmother did not know the name of the tribe. The minor's father also stated his paternal grandfather was one-sixteenth Indian, but a notice to the *125 Bureau of Indian Affairs received no response. (Id. at p. 194.) Levi U. held the record provided no basis to impose a duty on the dependency court to make further inquiry into the child's possible Indian ancestry. "Here, apart from the rather vague information provided by family members, the record contained no basis whatever for continuing to assume the minor must be an Indian child within the meaning of the [ICWA]." (Id. at p. 198.)
(3) Here, the children's paternal grandmother had told the Department that "I can't say what tribe it is and I don't have any living relatives to provide any additional information. I was a little kid when my grandmother told me about our Native American ancestry but I just don't know which tribe it was." This information is too vague, attenuated and speculative to give the dependency court any reason to believe the children might be Indian children. We therefore find no error.

DISPOSITION
The order of the superior court is affirmed.
Mallano, P. J., and Rothschild, J., concurred.
NOTES
[1] All statutory references herein are to the Welfare and Institutions Code unless otherwise noted.
[2] On May 26, 2009, we affirmed the court's jurisdictional and dispositional orders. (In re J.D. (May 26, 2009, B207787) [nonpub. opn.].)
[3] California Rules of Court, rule 5.481(a)(5) provides: "The circumstances that may provide reason to know the child is an Indian child include the following: [¶] (A) The child or a person having an interest in the child, including an Indian tribe, an Indian organization, an officer of the court, a public or private agency, or a member of the child's extended family, informs or otherwise provides information suggesting that the child is an Indian child to the court, the county welfare agency, the probation department, the licensed adoption agency or adoption service provider, the investigator, the petitioner, or any appointed guardian or conservator; [¶] (B) The residence or domicile of the child, the child's parents, or an Indian custodian is or was in a predominantly Indian community; or [¶] (C) The child or the child's family has received services or benefits from a tribe or services that are available to Indians from tribes or the federal government, such as the U.S. Department of Health and Human Services, Indian Health Service, or Tribal Temporary Assistance to Needy Families benefits."