Filed 7/27/16  In re P.W. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re P.W., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E065340 |
| Plaintiff and Respondent, | (Super.Ct.No. J254182) |
| v. | OPINION |
| A.R., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Danielle E. Wuchenich, Deputy County Counsel, for Plaintiff and Respondent.

1

A.R., hereafter referred to as "mother," appeals from an order terminating her parental rights to her daughter, P.W.[1]  The only issue she raises is the juvenile court's failure to comply with noticing procedures under the Indian Child Welfare Act, or ICWA.  (25 U.S.C. § 1901 et seq.)  We conclude, however, that the information provided to the court was insufficient to trigger the duty to provide notice.  Accordingly, we will affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

On January 21, 2014, the Los Angeles County Department of Children and Family Services filed a petition alleging P., age six, came within Welfare and Institutions Code section 300, subdivisions (a), (b), (g) and (j).  Specifically, the petition alleged that mother and her male companion struck P. and her sister, M., with a belt, and left them with an unrelated caretaker and failed to return.  It also alleged mother had an unresolved drug problem.  An amended petition later added an allegation of domestic violence between mother and her boyfriend.

The children had marks and bruises on their bodies.  Mother had left the children with a friend.  The friend was unable to contact mother.  M. is autistic and nonverbal.  P. was taking M. to the bathroom and bathing her.  P. reported that mother and her boyfriend would hit her and M. with a belt.

---

[1]  The proceedings involved mother's other daughter, M., as well.  However, because M.'s permanent plan was legal guardianship, the court did not terminate parental rights as to her, and this appeal pertains solely to P.  P.'s father is also not a party to this appeal.

Mother admitted using a belt to spank the children and to smoking marijuana. However, she said, hitting her daughter in the head with a belt was an accident. The children were detained.

The social worker recommended reunification services for mother. Mother started visiting the children. At the jurisdiction and disposition hearing, mother waived her trial rights, and the court sustained the amended petition. Mother was given family reunification services. Her case plan included drug testing, a drug treatment program, and counseling to address anger management and domestic violence. The court then transferred the case to San Bernardino County.

San Bernardino County accepted the transfer on April 24, 2014. Mother was present in court. The case was continued to the six-month review hearing, set for September 24, 2014.

At the six-month review hearing, the social worker recommended additional family reunification services. Mother was complying with visitation and court ordered services, and had completed her parenting program. Mother initially tested positive for marijuana but had since tested clean. She was working and living with her sister. The children were placed in two separate foster homes. The children had some nightmares and hyperactivity after the first few visits with mother, but their behaviors were subsiding as visitation continued. Mother's progress was found to be substantial. The court ordered additional family reunification services.

On March 24, 2015, at the 12-month review hearing, the court found that mother had made substantial progress in her case plan and ordered continued family reunification services. Mother had successfully completed her court-ordered services and continued to drug test negative. Mother had full-time employment and was living in an apartment. She was very consistent with her supervised visits with M. and had progressed to unsupervised day visits. P. had been diagnosed with posttraumatic stress disorder. Mother had not been offered conjoint counseling because of P.'s ongoing anxiety regarding visits and reunifying with mother. P. had expressed a desire not to visit mother, but her behavior during visits was positive. Mother was granted unsupervised overnight and weekend visitation with M. Visitation with P. continued to be supervised. Mother set a hearing to address conjoint counseling.

A month later, a child abuse referral came in alleging that mother had sexually abused P. in the past. P.'s therapist was unwilling to facilitate conjoint counseling until the sexual abuse allegations were resolved. The court ordered mother's visits with both children to be supervised. A subsequent petition was filed alleging past sexual abuse by mother against P. Mother denied the allegations in the petition.

The case was set for trial on the new petition concurrently with the 18-month review hearing. The social worker reported that P. had claimed mother put her finger in P.'s private parts as a punishment. Mother denied the allegations and stated that P. was lying and was a "psychopath." Mother also stated she never used physical discipline on the children. According to mother, the marks on the children were from falling while

4

playing. Mother told the social worker that she originally admitted the abuse to start services and get her children back. Mother visited P. once during the reporting period. P. stated that she did not want to visit mother and had anxiety about visits. Mother's visits with M. were inconsistent. The social worker recommended visits with M. be found detrimental due to the sexual abuse allegation and M.'s autism. The social worker also recommended termination of reunification services and requested a hearing be set to determine a permanent plan for P. In addition, she recommended a permanent plan of legal guardianship be ordered for M.

Mother did not attend the hearing. P. was present and told the court she did not want to live with mother but wanted to be adopted by her current foster parents, with whom she felt safe and loved. The court sustained the allegations in the petition. The court suspended visitation with both children and ordered reunification services terminated. It set a hearing to determine a permanent plan for P.

P.'s selection and implementation hearing was held on January 25, 2016. The social worker recommended termination of parental rights. There had been no visits between mother and P. during the reporting period, and P. stated that she no longer wanted to have visits with M., either. Mother was not present in court. The court terminated parental rights as to P. and placed her with a prospective adoptive family.

Mother filed a timely notice of appeal.

<u>LEGAL ANALYSIS</u>

THE DUTY TO PROVIDE NOTICE UNDER ICWA DID NOT ARISE

*Background*

Mother contends that reversal is required because San Bernardino County Children and Family Services and the juvenile court failed to provide notice of the proceedings under ICWA to the relevant tribes before terminating her parental rights.

ICWA provides that in involuntary proceedings pertaining to the removal of children from their parents if "the court knows or has reason to know that an Indian child is involved," the party seeking the foster care placement of, or termination of parental rights to, an Indian child, shall notify the parent or Indian custodian and the Indian child's tribe of the pending proceedings. (25 U.S.C. § 1912(a).) The act defines "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) As it applies to minors, the Welfare and Institutions Code adopts that definition in its statutory scheme for implementation of ICWA, "unless the context requires otherwise." (Welf. & Inst. Code, § 224.1, subd. (a).)

In this case, mother filed a "Parental Notification of Indian Status" (form ICWA-020) stating that as far she knew, she did not have Indian ancestry. The detention report stated that ICWA does not apply because mother stated that she does not belong to a tribe but might have Apache heritage. At the detention hearing in Los Angeles County, the

6

court inquired as to mother's heritage. Mother's attorney reported that mother had stated that she had "heard" that she had some "family history," but to her knowledge, she had no "American Native" heritage. In response to the court's question, mother stated that any Indian heritage was on her mother's side. She agreed with the court's characterization of the family history as "folklore" or "something that's been passed down." She stated that she had no information regarding her parents or grandparents ever being registered members of any tribe or if they had ever received any services.

The court ordered the social services agency to contact the maternal grandmother to "determine whether there's any additional information which would lead the court to believe there's any American Indian heritage that is sufficient to trigger the Indian Child Welfare Act." The court found that ICWA was not implicated at that point, but that the finding was subject to reevaluation if further information was developed.

In the jurisdiction and disposition report, the Los Angeles County social worker reported that she had spoken to the maternal grandmother, who reported that she might have Cherokee ancestry. The grandmother had no "ancestry information" available, but stated that she would call her mother (the maternal great-grandmother). At the jurisdiction and disposition hearing, there was no discussion of the applicability of ICWA, and the court did not make any further order concerning its applicability. The case was then transferred to San Bernardino County.

The initial report and all subsequent reports prepared by San Bernardino County Children and Family Services (hereafter referred to as "the agency") stated that ICWA does not apply. There was no discussion of ICWA at any of the San Bernardino hearings.

7

There is no report that contains any reference to efforts to obtain further information from the maternal grandmother concerning her possible Indian heritage.

*Forfeiture*

The agency contends that mother has forfeited review of this contention by failing to raise it in the juvenile court in a timely manner so that the court could have complied with the requirements of ICWA. It notes that mother did not raise the question of ICWA compliance at the jurisdiction and disposition hearing, did not raise it in an appeal from that order, and had never raised it at all in the proceedings in San Bernardino County. It relies on the familiar rule that appellate review is not available if an issue could have been raised in the trial court but was not. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138.) However, the purpose of ICWA is to promote the protection and preservation of Indian tribes and their resources, including their children and families, which Congress found to be vital to the continued existence and integrity of the tribes. (25 U.S.C. § 1901.) The protection of this interest is at the core of ICWA. (*Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 52.) Accordingly, the tribe has "an interest in the child which is distinct from but on a parity with the interest of the parents." (*Ibid.*) The purpose of ICWA's notice requirement is "to enable the tribe to determine whether the child is an Indian child and to advise the tribe of its right to intervene" (*In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1267) and, thus, protect the tribal interests recognized by Congress in enacting ICWA. In the absence of adequate inquiry and/or notice, the tribes have no voice in the proceedings and cannot act to protect their own rights. (*Samuel P.*, at p. 1267; *In re Kahlen W.* (1991) 233 Cal.App.3d

8

1414, 1421.)  For this reason, the majority of appellate opinions have rejected claims of forfeiture based on parental inaction prior to the termination of their parental rights.  (See cases collected in *Guardianship of D.W.* (2013) 221 Cal.App.4th 242, 249.)  We agree with this reasoning and hold that mother's inaction did not forfeit appellate review.

After this cause was submitted for decision, the California Supreme Court addressed this issue in *In re Isaiah W.* (July 7, 2016, S221263) ___ Cal.4th ___ [2016 Cal.Lexis 4742].  In that case, the court stated:  "We agree with the majority view among the Courts of Appeal that 'given the court's continuing duty throughout the dependency proceedings to ensure [that] the requisite notice is given [citation], and the protections the ICWA affords Indian children and tribes, the parents' inaction does not constitute a waiver or otherwise preclude appellate review' [citation]" of a contention that the juvenile court failed to give notice as required by ICWA.  (*In re Isaiah W.*, *supra*, ___ Cal.4th ___ [2016 Cal.Lexis 4742 at p. *20].)  Accordingly, we reject the agency's contention that the issue is forfeited.

*Notice*

Mother contends that the information she provided to the juvenile court at the detention hearing, and that her mother confirmed afterward, was sufficient to trigger the court's duty to order noticing under ICWA.  We disagree.

Notice is required if the court has "reason to know that an Indian child is involved."  (25 U.S.C. § 1912(a); see Welf. & Inst. Code, § 224.2, subd. (a).)  The circumstances under which a dependency court has reason to know a child is an Indian child are set forth in California Rules of Court, rule 5.481(a)(5), and include, as relevant

here, where "[t]he child or a person having an interest in the child, including an Indian tribe, an Indian organization, an officer of the court, a public or private agency, or a member of the child's extended family, informs or otherwise provides information suggesting that the child is an Indian child to the court [or] the county welfare agency . . . ." Vague or speculative information, such as a statement that a child "may have" Indian ancestry, does not give the court any reason to believe that the child is an Indian child. (*In re J. D.* (2010) 189 Cal.App.4th 118, 124, and cases cited therein.) The information provided by mother and the maternal grandmother that P. "might" have Apache or Cherokee ancestry is not sufficient to trigger the notice requirement.

We also reject any implication in mother's briefing that either the court or the social service agency in either Los Angeles County or San Bernardino County had a duty to pursue any additional information that the maternal great-grandmother might have been able to provide. Upon receiving information that suggests that a child is or may be an Indian child, a social services agency has a duty to inquire of the parent and the child's extended family members to obtain any further information that is available to assist the court in determining whether notice to a tribe or tribes, or to the Bureau of Indian Affairs (BIA), is required. (Cal. Rules of Court, rule 5.481(a)(4)(A).) Under both ICWA and California law, "extended family member" includes the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); accord, Welf. & Inst. Code, § 224.3, subd. (c) [adopting ICWA definition of extended family member].) It does not include great-grandparents. Accordingly, although the maternal great-grandmother *might* have

10

had additional information, the social workers had no statutory duty to pursue it directly with her.  Nor, did the social workers have a duty to conduct an independent investigation for further information.  (*In re C.Y.* (2012) 208 Cal.App.4th 34, 41.)

Nevertheless, even though no duty to provide notice arose based on the information provided by mother and the maternal grandmother, mother correctly notes that after the case was transferred to San Bernardino County, both the agency and the court had an ongoing obligation to make inquiry into P.'s possible Indian status.  Welfare and Institutions Code section 224.3, subdivision (a), provides that both the court and the county welfare department have "an affirmative and continuing duty . . . in all dependency proceedings" to inquire whether the child is or may be an Indian child.  The duty of inquiry continues throughout the proceedings in the dependency court.  It ceases only when the court has provided proper notice to the relevant Indian tribes and to the BIA, and either the tribes "respond that the minor is not a member or not eligible for membership, or if neither the BIA nor any tribe provides a determinative response within 60 days."  (*In re Isaiah W.*, *supra*, ___ Cal.4th ___ [2016 Cal.Lexis 4742 at pp. *24].)  "At that point, the court is relieved of its duties of inquiry and notice ([Welf. & Inst. Code,] § 224.2, subd. (b)), unless the BIA or a tribe subsequently confirms that the child is an Indian child (§ 224.3[, subd.] (e)(3))."[2]  (*Id*. at p. *23].)  Accordingly, even though the Los Angeles County court did not have a duty to notice any tribe or the BIA based on

---

[2]  Presumably, even after a negative response from noticed tribes, the court's duty to inquire, and if warranted to give notice, would arise anew if the court later receives new information sufficient to give it reason to know the child is an Indian child.

11

the information mother and the maternal grandmother provided, the duty to inquire continued after the case was transferred to San Bernardino County. It was error, therefore, for the agency to report that ICWA does not apply, and it was error for the juvenile court to fail to inquire whether there was any reason to know that P. was an Indian child. Mother did not, however, seek to bring to the court's attention any further information that would give the court reason to know that P. was an Indian child, and she does not represent on appeal that any such information existed. Moreover, her reference to the ongoing duty to inquire appears to be a typographical error, in that she otherwise limits her argument to the contention that a duty to give notice existed, based on the information that was presented to the court.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:


RAMIREZ

P. J.


MILLER

J.