Filed 9/16/16  In re E.S. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.S., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  R.R.,  Defendant and Appellant. | E065500  (Super.Ct.No. J258283)  OPINION |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Reversed with directions.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

1

This appeal concerns E.S., one of three half siblings who were detained when their mother and her boyfriend were arrested for acts of extreme child abuse committed against a fourth child, U., who resided in their home. R.R., E.S.'s biological and presumed father, appeals from an order terminating his parental rights. He contends that the court committed reversible error when it did not appoint an attorney for him at the jurisdiction/disposition hearing or at subsequent hearings, and that the evidence supporting his Indian ancestry warranted notice and further inquiry under the Indian Child Welfare Act of 1978 (ICWA). (25 U.S.C. § 1901 et seq.)

We find no error with respect to the court's failure to appoint counsel. However, we agree with R.R. that further inquiry concerning the child's possible status as an Indian child is required.

PROCEDURAL AND FACTUAL HISTORY

In January 2015, E.S., his two half siblings and a fourth child, U., were removed from the custody of E.'s mother, based on allegations that the mother and her live-in boyfriend had committed acts of felony child abuse against U.[1] San Bernardino County Children and Family Services (CFS) filed a petition pursuant to Welfare and Institutions Code section 300[2] on E.'s behalf, alleging the mother's abuse of U. and that the whereabouts of E.'s father and his ability to parent E. were unknown. At the detention

---

[1] The mother remained incarcerated awaiting trial throughout the dependency proceedings and was not given reunification services.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

hearing, E.'s mother identified R.R. (hereafter R.) as E.'s father. She stated that he lived in Denver and gave his date of birth. She stated that she had a child support order for him, but he had never paid child support. She did not provide an address or telephone number for him. The children were ordered detained, and E. and his half siblings were placed together in a foster home.

Before the jurisdiction/disposition hearing, a first amended petition was filed, alleging that E. was at risk of serious physical harm because of the abuse inflicted on U.; that R. should have known that E. was at risk of harm, but failed to keep in contact with E.; that R. failed to protect E.; that R. had not provided consistent care and support for E.; that R. had not visited with E. for more than a year; and that R.'s ability to parent E. was unknown.[3]

Before the hearing, CFS had established contact with R. He reported that he might have Indian ancestry and stated that he needed to "investigate with his family more to find the information."[4] R. reported that when he was dating E.'s mother, she was aggressive toward her oldest child and yelled at him. He thought she was mean to the child and did not like the way she parented him. Nevertheless, when she moved to California and took E. with her, he did not seek visitation or file for custody, and he had not seen E. since E. was less than a year old. He had an arrest for domestic violence and

---

[3] The allegations of failure to provide care and support referred not to E. but to one of his half siblings. R. acknowledges that this was a clerical error.

[4] The mother denied Indian ancestry.

3

was required to complete probation for one year. CFS recommended that reunification services be provided to him and that he be recognized as E.'s presumed father.

Despite being notified of the jurisdiction hearing set for March 5, 2015, by telephone and by mail, R. did not appear at the hearing. The hearing was continued to March 25, 2015. Again, R. did not appear at the hearing. The court recognized him as E.'s presumed father. The court made appropriate jurisdictional findings as to E. It ordered reunification services and supervised visitation for R. and authorized the State of Colorado to assess R. and his mother as possible placements for E. under the Interstate Compact on the Placement of Children. (Fam. Code, § 7900 et seq.)

For the six-month review hearing, CFS recommended terminating R.'s reunification services and setting a permanency hearing for E. Notice of the hearing was sent by first-class mail to R.'s last known address. CFS noted in its report that R. had not participated in his case plan and had not submitted to random drug testing. At the beginning of the reporting period, R. had contacted the social worker a few times, and she went over the case plan with him and submitted it to him by mail. The social worker also provided, by certified mail, a list of counselors he could use and parenting education sessions to attend. It did not appear that he participated in either general counseling or parenting education. He was set up for random drug testing, but had not participated, and he had also not requested any visits with E.

For months after the initial contact during the reporting period, R. did not return the social worker's phone calls. He contacted the social worker "through his mother"[5] to state that he never received calls or mail from the social worker. He did not ask how E. was doing or ask for a visit. When the social worker asked him if he wanted to care for his son, he replied, "Eventually!" He wanted his mother to be considered for placement, but was apparently told that this was not possible because he was living at his mother's house. The mother later informed the social worker that R. had moved out in August. His sister reported that he had moved to Denver. The social worker was of the opinion that R. was not willing or able to care for his son.

E. and his younger half sibling had been in the home of their caretaker for nine months.[6] E. appeared very comfortable there. He was reportedly doing well emotionally and behaviorally. The caretaker expressed interest in adopting him, "if there was a need."

R. did not appear at the review hearing. The court found that notice had been given as required, that R. had failed to visit or contact the child for six months, and that there was not a substantial likelihood that E. could be returned to the parents within the statutory time. The court terminated reunification services and set a permanency hearing

---

[5] The meaning of this phrase is not clear, in that the report appears to state that the social worker spoke to R. personally.

[6] The other half sibling, P., was returned to his father and the dependency was terminated as to him.

pursuant to section 366.26, with a plan of adoption. The court ordered CFS to mail notification of writ rights to R. at his last known address.

In its report prepared for the section 366.26 hearing, CFS recommended adoption by E.'s prospective adoptive parents, with whom he and his half sibling had lived for a year. E. was bonded with the family and viewed the couple as his parental figures. R. had not had any visits with E. R.'s mother withdrew her request to be considered for placement, in part because she had seen E. once or twice and did not think it would be fair to him to placed with her because she was a stranger to him.

R. was notified by publication of the section 366.26 hearing, after numerous attempts at personal service failed. He did not attend the hearing. The court terminated parental rights and ordered adoption as E.'s permanent plan.

R. filed a timely notice of appeal.

## LEGAL ANALYSIS

### 1.

### FAILURE TO APPOINT COUNSEL

Father contends that the trial court's failure to appoint counsel for him both before and after the jurisdiction/disposition hearing was error and requires reversal. Father asserts that as a presumed father, he was entitled to appointment of counsel at both stages.

We first note that R.'s contentions that the juvenile court erred by failing to appoint counsel at the jurisdiction/disposition phase of the proceedings and at any other stage of the proceedings prior to the permanency hearing are not cognizable on appeal

6

from the order terminating parental rights.  Errors that occur at a jurisdiction or disposition hearing must be addressed in a timely appeal taken from the disposition order.  (*John F. v. Superior Court* (1996) 43 Cal.App.4th 400, 404-405.)  A party may not challenge a prior appealable order in an appeal from a later order.  (*Ibid.*)  An order terminating reunification services and setting a permanency hearing must be challenged by a writ petition in order to preserve any issues for review following the order terminating parental rights.  (*In re Zeth S.* (2003) 31 Cal.4th 396, 413; § 366.26, subd. (*l*).)  R. did not file such a petition.  Accordingly, even if we were to find that the court's failure to appoint counsel at those stages was error, we could neither assess the error for prejudice based on R.'s assertions as to how the outcome of the earlier proceedings might have been more favorable to him nor reverse any order entered before the order terminating parental rights.  As we discuss, however, we find no error in the court's failure to appoint counsel for the section 366.26 hearing.

Parents in dependency proceedings have a statutory right to appointment of counsel as provided for in section 317, and may have a due process right to appointment of counsel under some circumstances.  (*Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 31-32.)  Whether due process mandates appointment of counsel must be decided on a case-by-case basis.  (*Ibid.*)  Father does not make a due process claim.  Accordingly, we deem the issue waived.

7

As pertinent in this case, section 317 provides:

"(a)(1) When it appears to the court that a parent or guardian of the child desires counsel but is presently financially unable to afford and cannot for that reason employ counsel, the court may appoint counsel as provided in this section.

"[¶] . . . [¶]

"(b) When it appears to the court that a parent or guardian of the child is presently financially unable to afford and cannot for that reason employ counsel, and the child has been placed in out-of-home care, or the petitioning agency is recommending that the child be placed in out-of-home care, the court shall appoint counsel for the parent or guardian, unless the court finds that the parent or guardian has made a knowing and intelligent waiver of counsel as provided in this section."

In *In re Ebony W.* (1996) 47 Cal.App.4th 1643, the court held that subdivisions (a) and (b) of section 317 must be read together. When so read, the statute requires the court to appoint counsel only if the indigent parent manifests some desire for representation by counsel. (*In re Ebony W.*, at p. 1647.) When an indigent parent does not appear at a proceeding and does not otherwise communicate a desire for representation, the court is under no duty to appoint counsel to represent that parent. (*Id*. at p. 1648; accord, *Janet O. v. Superior Court* (1996) 42 Cal.App.4th 1058, 1064-1066 [purpose of § 317 is to provide counsel only to those indigent parents who desire representation; good cause exists to relieve appointed counsel when the indigent parent does not maintain contact with counsel, fails to keep court advised of current address and does not attend hearings].) Father was informed that the court would appoint an attorney if he could not

8

afford one, but he never appeared in court to request counsel, nor did he write to the court to request counsel or ask the social worker how he could go about asking the court to appoint an attorney for him. Accordingly, the court had no reason to know that R. desired representation, and it had no obligation to appoint counsel.

R. contends in his reply brief that the notice provided was not sufficient because it failed to inform him that he was required to take any action to obtain appointment of counsel. He contrasts the notice in this case to the notice given in *In re Ebony W.*, *supra*, 47 Cal.App.4th 1643. In that case, the notice for the jurisdiction hearing stated that if the mother could not afford an attorney and desired representation, she was required to notify the clerk of the juvenile court. (*Id*. at p. 1645.) Thus, he contends, the mother in that case was explicitly told that she had to take action in order obtain appointed counsel. Here, in contrast, the notice provided to R. stated that an attorney would be appointed for him if he could not afford one. He contends that this is insufficient to convey to the parent that he or she must take some action in order to obtain counsel. We disagree. It is not rational to assume that the court would know, without being told, that the parent is unable to afford counsel. Consequently, the notice was sufficient to inform R. that he needed to inform the court that he could not afford counsel in order to trigger the appointment of counsel. In any event, R. did not challenge the sufficiency of the notice in his opening brief; rather, his sole challenge is to the court's failure to appoint counsel.

An appellant generally may not raise a new issue in a reply brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 766.) Accordingly, review of the issue is forfeited.[7]

2.

CONDITIONAL REVERSAL IS REQUIRED FOR FURTHER

COMPLIANCE WITH ICWA

Before the jurisdiction/disposition hearing, R. told the social worker that he might have Indian ancestry but that he needed to "investigate with his family more to find the information." Subsequent reports contain no further reference to R.'s possible Indian ancestry. R. now contends that these facts "warrant[] notice and further inquiry" in order to comply with CFS's duties under ICWA.

Under ICWA and the state statutes implementing it, a court and a county welfare agency have a duty to provide notice to appropriate tribes and/or the Bureau of Indian Affairs if they know or have "reason to know that an Indian child is involved." (25 U.S.C. § 1912(a); see Welf. & Inst. Code, § 224.2, subd. (a).) A nonexhaustive list of circumstances under which a dependency court has reason to know a child is an Indian child appears in Welfare and Institutions Code section 224.3, subdivision (b). They include, as relevant here, where "[a] person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or

---

[7] R. appears to be attempting to raise a number of substantive issues from the jurisdiction/disposition hearing under the guise of arguing prejudice from the court's failure to appoint counsel for him. As noted above, we do not have jurisdiction to address those issues substantively. And, because we have found no error in the court's failure to appoint counsel, we need not address those contentions as part of a prejudice analysis.

10

a member of the child's extended family provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (§ 224.3, subd. (b)(1).)  A statement such as R.'s, that he might have Indian ancestry is not sufficient to trigger the duty to give notice:  Vague or speculative information, such as a statement that a child "may have" Indian ancestry, does not give the court any reason to believe that the child is an Indian child.  (*In re J.D.* (2010) 189 Cal.App.4th 118, 124, and cases cited therein.)  Accordingly, no duty to provide notice under ICWA arose.  (*Ibid*.)

However, both courts and social workers have an "affirmative and continuing duty" throughout dependency proceedings to inquire whether a child "is or may be" an Indian child.  (§ 224.3, subd. (a).)  That duty continues even if no new information is provided between one proceeding and the next.  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 12.)  Upon receiving information that suggests that a child is or may be an Indian child, a social services agency has a duty to inquire of the parent and the child's extended family members to obtain any further information that is available to assist the court in determining whether notice to a tribe or tribes, or to the Bureau of Indian Affairs (BIA), is required.  (Cal. Rules of Court, rule 5.481(a)(4)(A).)  Under both ICWA and California law, "extended family member" includes the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2); accord, Welf. & Inst. Code, § 224.3, subd. (c) [adopting ICWA definition of extended family member].)  Here, R.'s statement that he might have Indian ancestry is sufficient to require CFS to make further inquiry.

11

(Cal. Rules of Court, rule 5.481(a)(4)(A).) CFS was in contact with both R. and his mother. By failing to make further inquiry to determine whether R. had found any information concerning his possible Indian ancestry and to inquire directly of his mother whether she had any such information, the social worker failed to carry out her duty of inquiry. The court failed in its duty of inquiry by failing to order CFS to make further inquiry. Accordingly, conditional reversal of the order terminating parental rights is necessary to allow CFS and the juvenile court to make further inquiry and to initiate notice, if the inquiries produce sufficient information. (*In re A.G.* (2012) 204 Cal.App.4th 1390, 1401-1402.)

## DISPOSITION

The order terminating parental rights to E.S. is reversed. The juvenile court is directed to order CFS to conduct further inquiry of R. and other extended family members as to E.S.'s possible Indian ancestry. If CFS obtains information sufficient to constitute reason to know that E.S. is an Indian child as defined by ICWA, the court shall proceed in accordance with ICWA. Otherwise, the order terminating parental rights shall be reinstated.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
J.

We concur:

RAMIREZ _____
P. J.

SLOUGH _____
J.

12