Filed 6/17/21 Certified for Publication 7/9/21 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re CHARLES W., JR., et al., Persons Coming Under the Juvenile Court Law. | D078574 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. J519864A-C) |
| Plaintiff and Respondent, | |
| v. | |
| CHARLES W., SR., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis III, Judge. Affirmed.

Law Office of Marissa Coffey, LLC, and Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Emily Harlan, Deputy County Counsel, for Plaintiff and Respondent.

Charles W. Sr. (Father) appeals from a jurisdictional/dispositional hearing regarding his children Charles W. Jr. (Jr.), S.W., and R.W. Father challenges the juvenile court's finding that the Indian Child Welfare Act (ICWA) does not apply, claiming there was insufficient inquiry of the mother's ancestry. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Prior Dependency Case*

The children's parents have a history of substance abuse. In 2018, then one-year-old Jr. and infant S.W. became juvenile dependents (Welf. & Inst. Code, § 300, subd. (b))[1] after law enforcement discovered drugs and drug paraphernalia accessible to the children in the family's vehicle. The parents admitted their use of methamphetamine. In January 2019, the juvenile court found ICWA did not apply in the proceeding. In July 2020,[2] after completing her reunification services, the children's mother (Mother) was granted sole custody of Jr. and S.W. Father did not complete his reunification services. The dependency case was closed.

*Current Dependency Case*

Several months later in late September, R.W. was born to Mother and Father. Baby R.W. is a full sibling to Jr. and S.W.

On December 2, police officers responded to the hotel room where the family was living and seized a large quantity of illicit drugs, which were accessible to the three young children. Both parents were arrested on drug-

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

[2] Further unspecified date references are to 2020.

2

related charges, and they admitted to using drugs. Mother told the assigned social worker she had Yaqui and Aztec heritage but she "already went through the Court process," and the court had found ICWA did not apply.

On December 4, the Agency filed dependency petitions (§ 300, subd. (b)) on behalf of all three children. The Agency submitted a completed form ICWA-010(A), indicating Mother's report of "Yaqui and Aztec Native American heritage" and Father's denial of Indian heritage. The Agency also filled out a "field worksheet for updating client demographics," seemingly used to collect or record basic demographic information. On this worksheet, as to ICWA applicability ("ICWA?"), the Agency marked "No" for the two older children and made no marking for R.W. Further, for each child, a tribal affiliation of "Sioux" is denoted.

Along with a host of other relevant information, the Agency's detention report includes Mother's comment regarding the court's prior ICWA process and a note that "on January 22, 2019, the [c]ourt found that ICWA did not apply on behalf of children [Jr.] and [S.W.]."

At the December 8 detention hearing, Mother and the children's whereabouts were unknown. Father was in custody and represented at the hearing by counsel, who waived Father's presence. The court issued a "pick-up and detain order" as to Mother and the children. In addition, the court deferred making an ICWA finding based on Mother's report of Native American ancestry. The court remarked that it had conducted a search in the federal register and Aztec was not a federally recognized Indian tribe for ICWA purposes, but the Yaqui tribe was federally recognized. Accordingly, the court directed the Agency to investigate and make further inquiry on the matter and ordered the parents to complete the "Parental Notification of Indian Status" form.

3

Around December 22, Mother and the children were located, and the Agency requested a special hearing for appointment of Mother's and minors' counsel.

*ICWA Finding*

The special hearing was held on December 28, and all parties attended the hearing remotely due to COVID-19 protocols. Mother was present throughout the hearing, telephonically. The court confirmed the appointment of counsel (Thomas Kisiel) for her. In addition, there was a discussion about ICWA applicability.

At the outset, Mother's counsel informed the court, "An ICWA-020 form for these children was previously filed with the court. There are no changes on behalf of the mother now, and she indicates she has no Native American ancestry."

A minute later, minors' counsel commented, "The only thing I have in my notes from the December 8th hearing is that it was put on the record that mom claimed Yaqui and Aztec Native [American ancestry]. I just want to make sure that is addressed." Mother's counsel responded, "I spoke to my client this morning. She has no Native American ancestry. She does have some ancestry through central Mexico." Minors' counsel replied, "Thank you."

Moments later, the Agency's counsel asked for an ICWA finding, "given Mother's not claiming Native American ancestry." There were no objections. Throughout the hearing, Mother did not contest counsel's representations regarding her heritage. The court went on to "reconfirm ICWA does not apply at this time based on the information provided to the court and the reaffirmation of no Native American ancestry as stated and will be provided on the 020 form by Mother's counsel, Mr. Kisiel."

4

*Jurisdiction and Disposition*

The Agency's subsequently filed jurisdiction and disposition report states that on "12/28/2020, the Court found that ICWA did not apply on behalf of the children[.]" The record contains no further discussion of ICWA. Following a contested jurisdiction/disposition hearing in which the Agency's reports were received in evidence without objections, the court assumed dependency jurisdiction over the children and removed them from parental custody. The court's written dispositional order indicates a finding "without prejudice that the [ICWA] does not apply to this proceeding."

Father's appeal followed.

DISCUSSION

Father contends the juvenile court and the Agency did not make a sufficient inquiry into the children's possible Indian ancestry through Mother before the court found ICWA does not apply.[3] We disagree.

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).) ICWA established minimum standards that courts are required to follow in involuntary proceedings to place a child in foster care or to terminate parental rights to ensure Indian tribes receive notice "where the court knows or has reason to know that an Indian child is involved." (25 U.S.C. § 1912(a); *Isaiah W.*, *supra*, at p. 8.)

---

3      Father's standing to raise an ICWA challenge is undisputed.

ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" (25 U.S.C. § 1903(4); see § 224.1, subd. (a).) The trial court and Agency have an affirmative and continuing duty in every dependency proceeding to determine whether ICWA applies. (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a)[4]; *Isaiah W.*, *supra*, 1 Cal.5th at pp. 10-11.) In cases "where the court knows or has reason to know that an Indian child is involved," ICWA requires the Agency, or other party seeking adoption or foster care placement, to notify "the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a); *Isaiah W.*, *supra*, at p. 5.)

Following changes to the federal regulations concerning ICWA compliance, California made conforming amendments to its statutory scheme regarding ICWA, effective in 2019. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*).) In *D.S.*, the court explained that the resulting clarification of law, found in part in section 224.2, "creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. [Citations.]" (*D.S., supra,* at p. 1052.)

---

[4] Further rule references are to the California rules of court.

At the first step, "[s]ection 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the Agency, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'" (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048-1049.)

There is a "reason to believe" a child is an Indian child whenever the court or social worker has "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1); see also § 224.2, subd. (d)(1)-(6); *In re T.G.* (2020) 58 Cal.App.5th 275, 290 [further inquiry required when there is a "reason to believe" child is Indian].)

We review a juvenile court's ICWA findings for substantial evidence. (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051; *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.)

In this case, we conclude the juvenile court and the Agency made an adequate inquiry under ICWA. The inquiry yielded no reason to believe the children were members of or eligible for membership in an Indian tribe. In its initial investigation and report, the Agency learned that in January 2019, the juvenile court found ICWA did not apply to the two older children. This prior finding is undisputed and unchallenged. Baby R.W. is a full sibling of the two older children, i.e., all three children share the same ancestry. If ICWA did not apply to the two older children, then it would not apply to the baby. Nevertheless, because there was an outstanding claim of Mother's potential Indian ancestry at the detention hearing, the juvenile court deferred making an ICWA finding and ordered further investigation.

7

At the next hearing on December 28, *in Mother's presence*, her counsel denied Mother had Native American ancestry. Counsel was aware of the court's prior finding and represented that Mother had no changes and no Native American ancestry. Even after minors' counsel raised the issue of Mother's claim to Yaqui and Aztec ancestry, counsel reiterated he had spoken to his client that very morning and Mother "has no Native American ancestry." Minors' counsel, serving as guardian ad litem for the children, was satisfied with this inquiry. Father has consistently denied Indian heritage. Thus, the court had no reason to believe the children were Indian.

In contesting the juvenile court's finding, Father argues that Mr. Kisiel's statements were made in Mother's absence. Father is mistaken, as he concedes in his reply brief. Indeed, Mother was present throughout the December 28th hearing, and she was in apparent agreement with her counsel's representation of "no Native American ancestry." Counsel is an officer of the court and a practitioner in juvenile dependency matters; there is no reason to believe he misreported Mother's ancestry or misunderstood the implications of his report. Furthermore, the court reasonably relied on a prior finding involving the same family. Substantial evidence supports the finding that ICWA does not apply.

Father points out that the Agency's initial field worksheet denotes a Sioux tribal affiliation. He acknowledges there is "no explanation" in the appellate record about the denotation. Father fails to establish the source of the information, or, that it was even a credible report. On our review for substantial evidence, we look for reasonable, credible, solid evidence that supports the trial court's order, whether contradicted or uncontradicted, and resolve all conflicts in favor of affirmance. (*In re D.F.* (2020) 55 Cal.App.5th 558, 565.) Here, the social worker interviewed the parents and relatives, and

no one mentioned a Sioux affiliation. Given Mother's (and Father's) denial of Native American ancestry, which postdated the field worksheet, the Sioux denotation was too "vague, attenuated and speculative to give the dependency court any reason to believe the children might be Indian children." (*In re J.D.* (2010) 189 Cal.App.4th 118, 125.)

Father argues on reply that the juvenile court was under a duty to directly interview Mother about her ancestry. In the face of counsel's unequivocal denial, twice, of Mother's Indian heritage in her presence, we are hard pressed to find that the court was required to disregard counsel's representations and directly question Mother. This is especially true in light of a prior court finding that ICWA did not apply. The court reasonably inquired of Mother's counsel, who disclaimed his client's Indian heritage. (*In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1521 [no reason to believe children were Indian where, at jurisdictional/dispositional hearing and upon inquiry from the court, "father's counsel clarified that although father had initially claimed he might have Indian ancestry, he had retracted that claim and did not have any Indian heritage"].)

The record does not contain Mother's completed Parental Notification of Indian Status form (ICWA-020) despite the court's order to submit one, possibly due to pandemic-related hardships and/or virtually conducted hearings. The form should be completed. (Rule 5.481(a).) As Father argues, the trial court and the Agency have a continuing duty to determine whether ICWA applies and must revisit a prior determination that ICWA does not apply "if it subsequently receives information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c); Rule 5.481(a); *Isaiah W.*, *supra*, 1 Cal.5th at pp. 10-11.) However, if there are no changes in Mother's information, the "Agency is not required to 'cast about' for information or

9

pursue unproductive investigative leads." (*D.S., supra*, 46 Cal.App.5th at p. 1053.)

In sum, the juvenile court and the Agency made an adequate inquiry into the children's possible Indian ancestry, relying on a prior court finding that ICWA did not apply and the parents' representations that they had no change in information and no Native American ancestry. We perceive no error by the juvenile court in fulfilling its duty of inquiry or in finding that ICWA does not apply.

Even if the court's or the Agency's inquiry was inadequate, we find any error harmless. Father does not assert on appeal that Mother or a relative has any new or pertinent information regarding Indian ancestry. To the contrary, given the prior ICWA finding regarding this family and the parents' unequivocal denials of Indian ancestry, we do not find it reasonably probable that further inquiry based on the record before us would yield a different result. Thus, Father fails to demonstrate a miscarriage of justice requiring remand. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430-1431.)

DISPOSITION

The court's findings and orders are affirmed.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

10

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re CHARLES W., JR., et al., Persons Coming Under the Juvenile Court Law. | D078574 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHARLES W., SR.,<br><br>    Defendant and Appellant. | (Super. Ct. No. J519864A-C)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed June 17, 2021, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1102(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to:  All parties

2