Filed 1/5/22  In re K.J. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| In re K.J. et al., Persons Coming Under the Juvenile Court Law. | C093976 |
| TEHAMA COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.F.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. 19JU000128, 19JU000129) |

Appellant A.F., mother of the minors (mother), appeals from the juvenile court's orders terminating parental rights.  (Welf. & Inst. Code, § 366.26.)[1]  Mother contends the court erred in finding the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) did not apply.  We will conditionally reverse the juvenile court's orders.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

On December 30, 2019, the Tehama County Department of Social Services (the Department) filed juvenile dependency petitions under section 300, subdivisions (b)(1) and (j) for mother's two minors:  K.J. (seven years old) and O.J. (five years old).  The petitions alleged that law enforcement found the family's house in a hazardous condition, including weapons, needles, drug paraphernalia, and general filth throughout the house, and the minors suffered from severe tooth decay.  They also asserted K.J. and O.J.'s siblings had been detained for abuse or neglect in prior cases.  On March 2, 2021, the juvenile court found by clear and convincing evidence the minors would be adopted and terminated parental rights.

During this process, the social worker investigated whether the minors were Indian children under ICWA.  Mother told the social worker on December 26, 2019, she did not have any known Native American ancestry.  The social worker spoke with the father (father) on December 27, 2019, who said he was not registered with any tribe "but he might have some Choctaw/Cherokee ancestry."

The December 30, 2019 detention report noted that ICWA does not apply to father "as referenced in case number J12931 J12932 on October 7 2014."  It also said K.J. and O.J. had "been previously removed by the Department on September 5, 2014," asking the court to take judicial notice of the prior cases.  The report concluded it inquired with the parents whether the minors are Indian minors, but found "ICWA does not apply."

At the December 31, 2019 detention hearing, the juvenile court asked both parents about their potential Indian ancestry.  Mother said, "my dad's mom was almost three quarters Indian" and her "mom's dad's mom was also . . . almost three quarters Indian

---

[2]  Because mother's sole claim challenges compliance with ICWA, we limit the background summary to ICWA-related facts and procedure unless otherwise relevant to the issue on appeal.

2

from Oklahoma," stating she remembered her "grandmother saying he's an Okie from Muskogee." Father said he thought he might have a bloodline from "Cherokee and Choctaw from Mississippi. I don't know. My aunt's been trying to track down that bloodline."

Both mother and father later submitted parental notifications of Indian status forms for each minor. Mother's forms, filed January 2, 2020, stated she "may have Indian ancestry" under "Colusa, CA" and "Oklahoma." She also checked the box that she has information the minors have Indian ancestry, but did not list any tribes. For relatives, she listed her father with the tribe "OK" and her father's mother's tribe as "Colusa."

Father's forms, filed January 9, 2020, stated he "may have Indian ancestry" "chacta/cherokee," and that he believes the minors have Indian ancestry with these two tribes from Mississippi. His form also listed five possible relatives with Indian ancestry: (1) his mother, but with no tribe listed; (2) his father, with "cherokee/chacta" in Mississippi; (3) his maternal grandmother, with no tribe listed; (4) his maternal grandfather, with no tribe listed; and (5) his maternal great-grandmother, with no tribe listed. Father indicated that none of the names listed were enrolled in a tribe.

On January 16, 2020, the social worker mailed notices to the Sacramento area director for the Bureau of Indian Affairs (BIA), the United States Secretary of the Interior, the Choctaw Nation of Oklahoma, the Mississippi Band of Choctaw Indians, and the Jena Band - Choctaw. The notices listed several Blackfeet and Cherokee tribes for mother's heritage but "[n]o information available" for father.

On January 27, 2020, the social worker asked mother if she had any further contact information on the names included on her form and she responded she did not but would try and find some. The social worker found numbers for father's mother and father but the numbers were disconnected. The social worker met with both parents on January 29, 2020, and they both indicated they had no additional information other than

3

what was on their forms. The social worker's disposition report, filed on January 31, 2020, stated ICWA "was found not to apply on Tehama County court cases J12931 and J12932 on September 10, 2014 on previous case [*sic*] with the same family members." In late January 2020, the social worker received letters from all three contacted Choctaw tribes that stated the minors were not eligible for enrollment in the tribes.

The juvenile court's orders throughout the process stated ICWA did not apply, including the initial December 31, 2019 detention order and the section 366.26 orders terminating parental rights.

Mother appealed from both the November 17, 2020 orders terminating reunification services and the March 2, 2021 orders terminating parental rights.

## DISCUSSION

Mother contends the juvenile court should have found there was a reason to believe the minors were Indian children based on the information provided by the parents, so a formal inquiry was required under ICWA. She asserts the Department's inquiry and notices did not satisfy ICWA procedures. Mother seeks reversal of the termination orders for this error. The Department contends there was never any reason to believe the minors were Indian children because mother never identified any federally recognized Indian tribes. The Department also claims there was no evidence father was the biological father of the minors and there was evidence his parents were foster parents. Even if there was a reason to believe, the Department asserts sufficient inquiry was made under ICWA, so any error was harmless.

"The ICWA protects the interests of Indian minors and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. (See 25 U.S.C. § 1902; *In re Levi U.* (2000) 78 Cal.App.4th 191, 195-196.) A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' (25 U.S.C. § 1901(3).)" (*In re A.W.* (2019)

4

38 Cal.App.5th 655, 662.)  ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4).)

ICWA imposes different notice and inquiry requirements depending on whether there is a "reason to know" or a "reason to believe" a minor is an Indian child.  There is reason to know if any of the circumstances under section 224.2, subdivision (d) are met, generally where the court has direct and reliable knowledge the minor is an Indian child (§ 224.2, subd. (d)(1)-(6)).  Reason to believe exists when there is some indication the minor may be an Indian child but there is no direct knowledge establishing reason to know.  (*In re M.W.* (2020) 49 Cal.App.5th 1034, 1044-1045.)

Section 224.2, subdivision (e) provides that if the court or social worker has reason to believe that an Indian child is involved in a proceeding, the court or social worker shall, as soon as practicable, make further inquiry regarding the possible Indian status of the child.  Further inquiry includes, but is not limited to:  (1) interviewing the parents, Indian custodian, and extended family members to gather the information required in the fifth paragraph of subdivision (a) of section 224.3;[3] (2) contacting the BIA and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in; and (3) contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.  Contact with a tribe must, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under ICWA, and sharing information identified by the tribe as necessary for

---

[3] Section 224.3, subdivision (a)(5) includes the name, birth date, and birthplace of the Indian child, if known; the name of the Indian tribe; and the names and other identifying information of the Indian child's biological parents, grandparents, and great-grandparents, if known.

the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case. (§ 224.2, subd. (e).)

We apply a substantial evidence review to the juvenile court's ICWA findings. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.) "Deficiencies in ICWA inquiry and notice may be deemed harmless error when, even if proper notice had been given, the child would not have been found to be an Indian child." (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1251.)

There was reason to believe the minors here were Indian children. Father provided information that he had family members of a Choctaw or Cherokee tribe in Mississippi. He also listed several relatives as possible members of one of these tribes. Though father did not provide specific tribe names, the information he did provide has been routinely found sufficient to create a reason to believe. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 404 ["even though the mother in [*In re D.F.* (2020) 55 Cal.App.5th 558] did not identify a specific tribe, she did specify it was a tribe from New Mexico, we found 'this information [wa]s specific enough to trigger the duty of further inquiry' "]; *In re D.S., supra*, 46 Cal.App.5th at pp. 1046, 1052 [finding statements by the paternal aunt that the father "may have Indian heritage" created a reason to believe].)

The Department therefore was obligated to further inquire whether the minors qualified as Indian children. The Department appears to have done this for potential Choctaw eligibility, providing notice of the proceedings to three Choctaw tribes. The Department also sent these notices to the BIA and the Secretary of the Interior. There is no evidence in the record, however, that any Cherokee tribes in Mississippi were notified of the proceedings. The notices also did not list any possible Indian heritage for father and instead listed a wide range of possible Indian heritage for mother.

The Department also did not contact all possible family members with relevant information. The Department tried to contact only two family members listed on father's form as being possible members of a Choctaw or Cherokee tribe. But the Department did

6

not try to contact father's aunt, who could reasonably be expected to have additional information on the minors' heritage because father said she was "trying to track down that bloodline." Mother also stated she had family members on both sides that were "three quarters Indian" and provided the names of these individuals on her forms. Even if this may not have been enough to create a reason to believe, these are additional individuals that were not contacted even though they could have reasonably been expected to have information regarding the minors' eligibility. Mother was working to get contact information for these individuals, but the social worker appears to have only requested this information again two days after the initial request. (*In re K.R.* (2018) 20 Cal.App.5th 701, 709 ["a social services agency has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status"].)

The Department and the juvenile court must have relied on the prior ICWA finding. Mother and father had been the subject of prior proceedings involving these same minors and the juvenile court had previously found ICWA did not apply in those proceedings. This would explain the juvenile court finding ICWA inapplicable in these proceedings at the first detention hearing, before either parent filed their parental notifications.

Those prior findings, however, could not be conclusive in these proceedings. ICWA imposes "a continuing duty . . . to inquire whether a child might be an Indian child." (*In re J.D.* (2010) 189 Cal.App.4th 118, 123.) So a juvenile court "must revisit a prior determination that ICWA does not apply 'if they subsequently receive information that provides reason to know the child is an Indian child.' " (*In re Charles W.* (2021) 66 Cal.App.5th 483, 491; § 224.2, subd. (c); Cal. Rules of Court, rule 5.481(a).)

Without any new evidence the children are Indian children, a prior finding that ICWA was inapplicable makes it unlikely that additional inquiry or notice would have revealed the children to be within ICWA, rendering any error harmless. (See *In*

*re Charles W., supra*, 66 Cal.App.5th at p. 492 ["given the prior ICWA finding regarding this family and the parents' unequivocal denials of Indian ancestry, we do not find it reasonably probable that further inquiry based on the record before us would yield a different result"].)  But we do not have sufficient information in the record to determine whether the information mother and father provided was information already provided at the prior proceedings.  It is mother's obligation to present a record that affirmatively demonstrates error.  (*In re D.W.* (2011) 193 Cal.App.4th 413, 417-418.)  Mother has done so here.  If we conclude the juvenile court did not comply with the ICWA provisions, we "reverse only if the error is prejudicial."  (*In re A.L.* (2015) 243 Cal.App.4th 628, 639.)

Given the state of the record, we cannot say with certainty that the notices were legally sufficient or that there was no prejudice to the relevant tribes.  It is possible the Department notified only Choctaw tribes because it had previously notified Cherokee tribes in Mississippi in the prior proceedings.  It is also possible the Department met with the paternal aunt and mother's family members to see if they unearthed any new information since the prior proceedings.  But these facts are not in the record and we cannot assume such is the case because it is also possible the information provided here was additional information discovered since 2014, when ICWA was found not to apply in the prior proceedings.  We therefore cannot find the Department's incomplete inquiry harmless.

We also find the Department forfeited its additional arguments regarding father's lineage.  It never contested with the juvenile court father's biological status or argued his parents were foster parents.  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["an appellate court's discretion to consider forfeited claims extends to dependency cases"]; *In re Kiana A.* (2001) 93 Cal.App.4th 1109, 1118 ["Fair play dictates that Mario A. cannot wait until his petition for presumptive father status has been denied in the juvenile court, then request genetic testing for the first time on appeal"].)  The record also belies the Department's positions.  Father was the presumed father from the beginning of the

proceedings because he was the minor's presumed father at the prior proceedings. And again, his biological status was never challenged. Father's and mother's interviews with the social worker also never mention or even allude to another possible biological father. As for his parent's being foster parents, the Department's sole evidence is a notation on father's form stating his father's last name is "[J.]/Foster." This ambiguous statement is contradicted by father's autobiographical statements to the social worker regarding his upbringing, which strongly suggest his parents were his biological parents.

A failure to conduct a proper ICWA inquiry requires reversal of the orders terminating parental rights and a limited remand for proper inquiry and any required notice. (*In re A.B.* (2008) 164 Cal.App.4th 832, 839; *In re D.T.* (2003) 113 Cal.App.4th 1449, 1454-1456.) We must therefore remand for limited proceedings to determine ICWA compliance.

## DISPOSITION

The orders terminating mother's parental rights are conditionally reversed and the cases are remanded to the juvenile court with directions to order the Department to comply with the investigation and notice provisions of ICWA and the views expressed in this opinion. If, after proper notice, a tribe claims the minors as Indian children, the juvenile court shall proceed in conformity with all requirements of ICWA. If no tribe claims the minors as Indian children, the orders terminating parental rights shall be reinstated.

          /s/
         RAYE, P. J.

We concur:

  /s/
HULL, J.

  /s/
ROBIE, J.