111 Cal.Rptr.2d 628 (2001)
92 Cal.App.4th 105
In re JONATHAN D., a Person Coming Under the Juvenile Court Law.
Butte County Children's Services Division, Plaintiff and Respondent,
v.
Kathleen S., Defendant and Appellant.
No. C037483.
Court of Appeal, Third District.
September 5, 2001.
*629 Beth A. Melvin, under appointment by the Court of Appeal, South Lake Tahoe, for Defendant and Appellant.
Bruce Alpert, County Counsel, Law Office of Robert A. Glusman, Robert A. Glusman, Chico, and Kimberly Merrifield, for Plaintiff and Respondent.
RAYE, J.
Kathleen S., the mother of minor Jonathan D., appeals from the juvenile court's order terminating her parental rights. (Welf. & Inst.Code, §§ 366.26, 395.)[1] The mother contends the juvenile court erred by failing to require compliance with the notice provisions of the Indian Child Welfare Act (the Act). (25 U.S.C. § 1901 et seq.) We agree.

FACTUAL AND PROCEDURAL BACKGROUND
In May 1999 a dependency petition was filed under section 300, subdivision (b) concerning the 16-month-old minor. The petition alleged the minor's mother had been arrested for controlled substance offenses and had failed to reunify with the minor's half-sibling, the minor was observed to have bruising, and the minor's father was on parole. The petition was sustained and reunification services were ordered.
*630 In January 2000, following a contested six-month review hearing, the juvenile court terminated reunification services and set a section 366.26 hearing. The social worker's report for that hearing recommended a permanent plan of adoption.
The father's extraordinary writ petition was granted, and the section 366.26 hearing was vacated so the father could be provided with additional reunification services. In August 2000 the father's services were again terminated and the section 366.26 hearing was reset.
The social worker's report for the reset section 366.26 hearing again recommended a permanent plan of adoption. As had all prior reports concerning the minor, that report indicated the Act did not apply. Nonetheless, the record reflects that on November 14, 2000, the Butte County Department of Social Welfare (the Department) sent notice of the hearing by certified mail, return receipt requested, to the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee.
The section 366.26 hearing was held on November 27, 2000. At the hearing, the mother's attorney advised the court: "We have got another issue that the paternal grandmother tells me there's a definite ICWA, Indian Child Welfare Act, link. Her mother's father or somebody was full-blooded Cherokee. They have got the number and they can prove that." Later in the proceedings, the attorney provided the name of the relative, stating she was an enrolled member.
The social worker advised the court that the siblings' cases had been "deemed to not be ICWA." The social worker reported that none of the notified tribes had indicated they wanted to intervene, although a representative of the Eastern Band of the Cherokee Tribe had contacted her. According to the social worker, the representative of this tribe "was going to give me a call back but she stated over the phone she remembers the half-sibling case and she was uncertain, not noncommitted; that she would get back to me."
The attorney for state adoptions argued that the issue was "moot at this late state [sic ]." The attorney for the Department stated: "We have a history here of siblings and history in this case where various tribes have been notified without positively responding. A good deal of time has passed for counsel or any other family member to bring up any new information that may relate this child to the ICWA."
The mother's attorney advised the court the maternal grandmother was present and could provide information that might not have been available during the previous case involving the minor's half-siblings. The attorney told the court the mother and maternal grandmother had tried to contact the social worker but had not gotten a response.
Regarding compliance with the Act, the court found: "There cannot be a showing it would be in the best interests of the minor to have this matter heard at a contested evidentiary hearing on the issue of ICWA. I'm not pointing any fingers but it is interesting this is being raised on the day of trial on a [366.26]. The Court feels based on the prior history of this case the Department has conducted itself in accordance with state and federal law and hence will deny any request to continue this matter for the purpose of further contact with Indian tribes who are not here today."
Following a contested hearing, the juvenile court terminated parental rights and ordered a permanent plan of adoption.
The day after the hearing, the Department filed with the court return receipts from the three Cherokee tribes, which indicated receipt of notice by the Cherokee *631 Nation of Oklahoma on November 17, 2000; by the Eastern Band of Cherokee Indians on November 20, 2000; and by the United Keetoowah Band of Cherokee on November 21, 2000.[2]

DISCUSSION
The mother asserts that notice provided to the tribes was inadequate because it was not served at least 10 days before the section 366.26 hearing as required by the Act. We agree.
In 1978 Congress passed the Act, which is designed to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children in homes "which will reflect the unique values of Indian culture. . . ." (25 U.S.C. § 1902; Mississippi Choctaw Indian Band v. Holyfield (1989) 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29.)
Among the procedural safeguards included in the Act is its provision for notice, which requires: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention . . . . No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe . . . ." (25 U.S.C. § 1912(a), italics added.) Failure to comply with the notice provisions of the Act is a ground for petitioning to invalidate a termination of parental rights proceeding. (25 U.S.C. § 1914.)
Here, the return receipts from the three Cherokee tribes reflected that only one of the tribesthe Cherokee Nation of Oklahomareceived notice 10 or more days before the section 366.26 hearing. The Eastern Band of Cherokee Indians received notice seven days before the hearing, and the United Keetoowah Band of Cherokee received notice six days before the hearing.
The Department argues that the notice provisions of the Act were not triggered because there was no showing that the minor was an Indian child. The determination of whether a minor is, or is not, an Indian child is made exclusively by the tribe. (Cal. Rules of Court, rule 1439(g).) "[O]ne of the primary purposes of giving notice to the tribe is to enable the tribe to determine whether the child involved in the proceedings is an Indian child. [Citation.]" (In re Desiree F. (2000) 83 Cal. App.4th 460, 470, 99 Cal.Rptr.2d 688.) "Because the question of membership rests with each Indian tribe, when the juvenile court knows or has reason to believe the child may be an Indian child, notice must be given to the particular tribe in question or the Secretary [of the Interior]." (Id. at p. 471, 99 Cal.Rptr.2d 688.) Thus, the Indian status of a child need not *632 be certain or conclusive in order to trigger the Act's notice requirements. (Ibid.)
Additionally, the Department argues there was substantial compliance with the Act's notice requirements. This argument fails as well. "[S]tate courts have no jurisdiction to proceed with dependency proceedings involving a possible Indian child until a period of at least 10 days after the receipt of such notice. The notice requirement is not satisfied unless there is strict adherence to the federal statute. . . ." (In re Desiree F., supra, 83 Cal. App.4th at pp. 474-475, 99 Cal.Rptr.2d 688.) "Courts have consistently held failure to provide the required notice requires remand unless the tribe has participated in the proceedings or expressly indicated they have no interest in the proceedings." (In re Kahlen W. (1991) 233 Cal.App.3d 1414, 1424, 285 Cal.Rptr. 507.)
Although appellate courts in California have recognized that technical compliance with the Act's notice requirements may not be required where there has been substantial compliance, no reported decision in California has found substantial compliance when less than 10 days' notice was provided to the tribe. The issue has been addressed by a Washington State appellate court. In Matter of Welfare of M.S.S. (1997) 86 Wash.App. 127, 936 P.2d 36, the tribe was given less than 10 days' notice of a termination of parental rights proceeding. The tribe informed the social worker prior to the hearing that it did not intend to intervene or be involved in the proceeding. The Washington appellate court deemed the notice inadequate despite the communication from the tribe because of the possibility the tribe's decision was motivated by the time constraints imposed by the untimely notice. The court noted: "Ten days may be barely sufficient time for the tribe to ascertain whether the children are members, and if so, whether the tribe wants to intervene." (Id. at p. 41.) The court held: "[I]n view of this short timeframe, substantial compliance means strict compliancethe full 10 days." (Ibid.)
We agree. The Act expressly states that no termination of parental rights hearing shall be held until at least 10 days after receipt of notice. Notice short of 10 days simply does not comply with the Act, technically or substantially. Here, the one tribe that contacted the social worker indicated it would call her back, presumably regarding the minor's Indian status. As in Matter of Welfare of M.S.S., supra, 86 Wash.App. 127, 936 P.2d 36, it is possible here that the tribes were not given adequate time to fully investigate the minor's Indian status.
Contrary to the argument raised in the juvenile court that the minor's possible Indian heritage was raised too late in the proceedings, the tribe is entitled to receive notice whenever the court becomes aware of such heritage. "Notice is mandatory, regardless of how late in the proceedings a child's possible Indian heritage is uncovered. [Citations.]" (In re Kahlen W., supra, 233 Cal.App.3d at p. 1424, 285 Cal.Rptr. 507.) A tribe may intervene in dependency proceedings at any time, even after parental rights have been terminated. (25 U.S.C. § 1911(c); In re Desiree F., supra, 83 Cal.App.4th at pp. 472-473, 99 Cal.Rptr.2d 688.) Furthermore, a previous determination that the minor's siblings were not Indian children under the Act is not dispositive of the minor's Indian status because "[a] determination of tribal membership is made on an individual basis. . . ." (Id. at p. 470, 99 Cal.Rptr.2d 688.)
The notice provided to the tribes was untimely. The juvenile court's failure to require compliance with the Act's notice requirements is prejudicial error. (In re *633 Kahlen W., supra, 233 Cal.App.3d at p. 1424, 285 Cal.Rptr. 507.)

DISPOSITION
The orders of the juvenile court terminating parental rights are vacated and the matter is remanded to the juvenile court with directions to order compliance with the notice provisions of the Act. If, after proper inquiry and notice, no response is received from a tribe indicating the minor is an Indian child, all previous findings and orders shall be reinstated. If a tribe determines that the minor is an Indian child, or if other information is presented to the juvenile court that suggests the minor is an Indian child as defined by the Act, the juvenile court is ordered to conduct a new section 366.26 hearing in conformity with all provisions of the Act.
In all other respects, the orders are affirmed.
BLEASE, Acting P.J., and NICHOLSON, J., concur.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] The Department maintains there is no written indication on the return receipts as to the date the receipts were signed, "only a stamp from the post office." Notice to each tribe was sent to a post office box. The stamped dates all indicate "USPS," i.e., United States Postal Service. The dates stamped on the return receipts are directly below the signature line for receipt of the item. Furthermore, the date stamp on each return receipt is too large to fit within the box labeled "Date of Delivery." As there is no other date required to be entered on the return receipt, we find no other logical explanation for the stamped date other than that it is the date on which the item was received.