Filed 12/12/22 In re A.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.G. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E079103 |
| Plaintiff and Respondent, v. | (Super.Ct.No. SWJ1500240) |
| R.P., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Michael J. Rushton, Judge. Reversed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh Tran, County Counsel, Teresa K.B. Beecham and Melinda H. Frey, Deputy County Counsel, for Plaintiff and Respondent.

1

In 2020, three children were made dependents of the court: E.G.[1], age 10, A.G., age 7, and C.G., age 4. R.G. is the father of the two older children, while B.G. is the father of the youngest child. After the children were declared dependents due to mother's substance abuse and domestic violence in the family, Family Reunification Services were ordered, but mother neither participated in services nor cooperated with Riverside County Department of Public Social Services (DPSS or Department), refusing to even answer the door when the social worker attempted contact.

Because B.G. indicated possible Indian heritage through the Cherokee Tribe, notices were sent pursuant to the Indian Child Welfare Act (ICWA), but the Cherokee Tribes determined that C.G. was not an Indian child, and the court so found. The parents of E.G. and A.G. had denied Indian ancestry in a previous dependency concerning those two children. The court found ICWA did not apply to E.G. or A.G. Services were terminated at the twelve-month review hearing, and parental rights were terminated as to A.G. and C.G. only. Mother appeals.

On appeal, mother's sole argument is that the court erred in failing to ensure compliance with the duty of initial inquiry pursuant to Welfare and Institutions Code[2], section 224.2. We conditionally reverse.

---

[1] E.G. is not involved in this appeal. Information about this child is included only for historical context.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

## BACKGROUND[3]

On February 14, 2020, the Department received a referral regarding allegations of neglect, domestic violence, and drug use by mother, R.P. A social worker had visited the home a few days earlier with respect to this referral, at which time mother denied drug use, but mother refused to submit a saliva test and left the residence before police could respond. Mother was reported to exhibit erratic behavior with rapid speech, unable to complete sentences, raising the concern she continued using controlled substances. Additionally, three men were seen roaming around the home. The social worker made two subsequent attempts to visit mother but no one answered the door. Eventually, the social worker contacted the children E.G. and A.G. at school, but they denied any substance abuse in the home.

In April, 2020, the social worker requested that police conduct a welfare check on the children, after which the officer reported belief that mother was under the influence but was unable to verify. On two subsequent occasions, the social worker attempted to make an unannounced visit, on the second of which she intended to inform mother of the intention to file a dependency petition--and again mother refused to answer the door. Finally, on April 8, 2020, the social worker (along with a police officer) spoke to mother who came to the door but would not open it. The social worker observed that mother

---

[3] Because the sole issue on appeal pertains to the adequacy of DPSS initial inquiry into the children's possible Indian ancestry, a detailed review of the family history and juvenile court proceedings is not required. We will provide a general overview of the dependency, focusing on the record information pertinent to the issue presented.

3

spoke in incomplete sentences and appeared disoriented. She refused a saliva test for drugs, declined services, and would not let the social worker interview the children.

On April 14, 2020, the Department filed a dependency petition alleging the children came within the provisions of section 300, subdivisions (b)(1) and (g), by virtue of mothers history of controlled substances, as well as father R.G.'s history of drug use, their prior welfare history, R.G.'s failure to protect, and B.G.'s incarceration, which left him unable to provide for C.G.

Mother and father R.G. had previously been involved with DPSS during a prior dependency based on similar allegations of drug use by both parents, specifically methamphetamine, and domestic violence. However, in 2017, E.G. and A.G. were returned to mother's custody following the birth of C.G. In that dependency, the parents indicated they had no Indian heritage, and the juvenile court made multiple findings in that proceeding that ICWA did not apply to E.G. or A.G. When the social worker attempted to inquire about mother's possible Indian heritage on April 8, 2020, in the current proceeding, mother refused to answer questions.

The initial hearing report recommended that the children be maintained with mother but detained from the two fathers. However, an addendum report was submitted on the date of the hearing recommending that the children be detained from mother as well as the two fathers, because mother had left the children in the care of her mother, the children's maternal grandmother. When asked by the social worker, father, R.G. denied Indian heritage.

4

On April 29, 2020, the initial hearing was held. The court provided ICWA-020 forms to the parents and directed them to complete the forms. At the hearing, father, R.G., executed an ICWA-020 form stating he had no known Indian heritage. Mother initially appeared at the courthouse but left before the case was called the first time; the matter was recalled when the court was informed that she had returned, but she left again. The court finally called the case in mother's absence and reported she had been "out of control" in the hallway. The court commented on her inability to control herself long enough to sit through the proceeding. The court found R.G. was presumed father of E.G. and A.G. At the trailed hearing for father B.G., who was incarcerated and unable to appear initially, he was found to be the presumed father of C.G. It also found that ICWA may apply based on B.G.'s representation of possible Indian heritage through the Cherokee Tribe from North Carolina. The court ordered the children detained with their maternal grandmother.[4]

On May 13, 2020, an ICWA-030 notice of child custody proceeding for Indian child was served on the parents, the separate Cherokee Tribal entities, the Sacramento Area Director of the Bureau of Indian Affairs (BIA), and the Secretary of the Interior (SOI), informing them of pending proceedings respecting C.G. The notice included

---

[4] We note that the minute order for the initial hearing states that "The Indian Child Welfare Act does not apply to these proceedings." This may refer to the original recommendation that the children remain with mother, but we cannot be sure. Further, at least one minute order contains a conflicting order that the children remain in mother's custody. The minute order was not corrected to delete the incorrect information. Because the children were involuntarily detained, this statement should not have been included. (42 U.S.C. §§ 1902, 1903, subd. (a)(i), 1912, subd. (a).)

information about both biological parents, as well as their parents, the biological grandparents, including full names, and dates of birth.[5]  Regarding both the biological father as well as biological paternal grandfather, the form indicates possible affiliation with the Cherokee tribe.

Regarding mother, the notice reflects no Indian ancestry, but includes names and other identifying information about her parents and grandparents.  The form indicates the maternal grandmother was born in Mexico, and on the line intended for identification of the tribe or band with which the grandparent may have affiliation, the form states, "Does not apply."  As to the maternal grandfather, his birthplace is California, and on the line for identifying possible tribal affiliation, the form again indicates, "Does not apply."  The record reflects that these notices were duly received by the BIA and SOI, as well as the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee (in Cherokee, North Carolina), and the United Keetoowah Band of Cherokee.

On May 15, 2020, the social worker attempted once again to inquire whether mother had Indian ancestry, but again mother declined to answer questions.

At the original hearing date set for the jurisdiction hearing, the court set the matter as contested, and found proper notice pursuant to ICWA.  Thereafter, the social worker submitted an addendum report which summarized the efforts made to determine if the children could be safely placed with father, R.G.  However, such placement would have

---

[5]  There was detailed information about mother's parents and grandparents, which, respondent suggests, indicates the social worker did inquire about possible Indian ancestry of the maternal grandparents, given that mother refused to be interviewed by the social worker.  Unfortunately, that information is not expressly stated.

6

been conditioned on father's abstinence from drugs. The social worker's follow-up revealed father tested positive for marijuana on May 14, 2020, and again on June 25, 2020 and that he failed to show up for two other tests. The report also documented that mother continued to avoid meeting with the social worker. As a consequence, the social worker recommended that mother be denied family reunification services pursuant to section 361.5, subdivision (b)(1) (parent's whereabouts unknown).

On July 22, 2020, the contested matter was heard, but all parents, including mother, executed JV-190 forms waiving the right to a trial, and agreeing to submit on the basis of social worker's reports. Because mother left the court before the case was called, the court could not inquire into the voluntariness of waiver but accepted it. The court received ICWA form-020, executed by mother prior to departing from the court, in which she denied any Indian ancestry, checking the box that indicated, "None of the above apply."

At the hearing, the court found that DPSS had conducted a sufficient inquiry pursuant to ICWA, and there is a reason to know that an Indian child was involved, respecting C.G. The court considered the reports submitted by DPSS, sustained the petition and declared the children to be dependents, removing custody of the children from all three parents. The court ordered family reunification services for all parents. Because DPSS had recommended denial of services, there was no case plan for mother's reunification. That information was provided to the court after mother was located and was provided to her.

7

On August 20, 2020, the Eastern Band of Cherokee Indians provided their response to the ICWA notice by indicating that C.G. was not an Indian child, nor eligible for tribal membership.

The six-month review report was submitted on January 6, 2021, recommending continued out of home placement and a continuation of services for six more months. The report, however, noted that neither mother nor father B.G. had made any progress on their court ordered services, but that father, R.G. had made progress. As to visitation, mother had not visited at all because she tested positive for drugs prior to the first scheduled visit. However, father, R.G., visited regularly and the visits were positive. The report included, as an attachment, a tribal response letter from the Cherokee Nation of Oklahoma indicating that C.G. was not an Indian child.

At the hearing on the six-month status review, the court found that father, R.G., had made adequate but incomplete progress on his reunification plan, but that both mother and father, B.G., had made no progress. The court authorized DPSS to liberalize visitation for father, R.G. and extended reunification services for all parents for another six months. The court also found that the Department had made sufficient inquiry and that ICWA did not apply to any of the children.

On June 14, 2021, the Department submitted its 12-month review report, recommending that reunification services be terminated, and the matter set for a hearing on the selection and implementation of a permanent plan pursuant to section 366.26. The report revealed mother was unemployed, having lost her job due to poor attendance, and

8

she had not enrolled or participated in any services whatsoever. Father R.G. had participated in some services but did not drug test, admitted he was not ready and did not have the resources to care for his children. Father B.G. could not be located.

In an addendum report, there was evidence father had tested positive for use of methamphetamine on two occasions in June 2021 but was permitted to visit the children because his behavior was normal. Mother, who had entered a rescue mission drug program, notified DPSS a few days later she did not know if she would stay there. In July, E.G. informed the social worker that she wanted to live somewhere else when the social worker broached the topic of concurrent planning and possible adoption. In the meantime, the maternal grandmother indicated she was willing to be appointed guardian of the children; the paternal grandparents of E.G. and A.G. requested to be assessed for placement.

In an addendum report, the social worker reported mother had communicated with her and was opposed to the plan of adoption. Mother informed the social worker she planned to enter an in-patient treatment program and that she was in a counseling/parenting program. However, there was no record mother had enrolled or participated in the programs indicated. The report also indicated E.G. still wanted to move from her current placement.

The 12-month status review hearing took place on August 12, 2021, with mother present in court. The court ordered E.G. to be interviewed for issues regarding placement that need to be brought to the court's attention, but otherwise adopted the social worker's

9

recommendations. The court found that ICWA did not apply and that the parents had failed to participate regularly and make substantive progress in their court ordered services. The court terminated reunification services for all parents and set the matter for a hearing on the selection and implementation of the permanent plan.

The social worker's report prepared for the section 366.26 hearing recommended termination of parental rights but recommended that the hearing be continued for 120 days for the adoption assessment. The children were currently placed with the paternal grandparents (the parents of father, R.G.), who denied any Indian ancestry. Mother had not visited the children since August 25, 2021, and the children were thriving in their placement.

On March 30, 2022, an addendum to the section 366.26 report was submitted, recommending that the court proceed with termination of parental rights as to A.G. and C.G., but to continue the section 366.26 hearing as to E.G. E.G. expressed much frustration with her younger siblings and did not wish to be placed with them. The social worker recommended terminating the parents' rights to free A.G. and C.G. for adoption by the paternal grandparents.

The section 366.26 hearing took place on April 5, 2022. Minors' counsel declared a conflict of interest as to E.G., and the hearing on the selection and implementation of a permanent plan respecting E.G. was continued. The court found proper notice had been provided, that it was likely the children would be adopted, and that terminating parental

10

rights would not be detrimental to the children. The court terminated parental right of all three parents to A.G. and C.G.

Mother appealed.

DISCUSSION

Mother's sole argument in this appeal is that the order terminating parental rights must be conditionally reversed for failure to ensure compliance with the duty of initial inquiry under section 224.2. We do not need to conduct any review respecting ICWA inquiry as to E.G., because mother appealed only the termination of parental rights judgment, which did not affect E.G., insofar as her hearing was continued to a later date. As to A.G. and C.G., we find the duty of inquiry was not properly discharged.

A.    *General Legal Principles Involving ICWA and the Duty of Inquiry*.

Congress enacted ICWA in 1978 to address "'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7-8, quoting *Miss. Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32 [104 L. Ed. 2d 29, 109 S. Ct. 1597].) ICWA declared that "it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will

11

reflect the unique values of Indian culture . . . ." (25 U.S.C. § 1902; *In re Abbigail A.* (2016) 1 Cal.5th 83, 90.)

California has "'incorporate[d] ICWA's requirements into California statutory law.'" (*In re Abbigail A., supra*, 1 Cal.5th at p. 91, quoting *In re W.B.* (2012) 55 Cal.4th 30, 52; see §§ 224–224.6.) "[S]ection 224.3, subdivision (a) . . . provides that courts and county welfare departments 'have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . is to be, or has been, filed is or may be an Indian child in all dependency proceedings and in any juvenile wardship proceedings if the child is at risk of entering foster care or is in foster care.'" (*In re Isaiah W., supra*, 1 Cal.5th at p. 9.)

To comply with ICWA, the juvenile court and the social service agency (SSA) "have an affirmative and continuing duty to inquire whether" a child who is the subject of a section 300 dependency petition "is or may be an Indian child." (§ 224.2, subd. (a); see Cal. Rules of Court, rule 5.481(a).) The duty to inquire begins with the initial contact. (§ 224.2, subd. (a).) It includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child about possible Indian heritage. (§ 224.2, subd. (b); see also, *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.)

If the SSA "has reason to believe that an Indian child is involved" in a section 300 proceeding, it must "make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable," by, inter alia, "[i]nterviewing

12

the parents, Indian custodian, and extended family members to gather the information required in [section 224.3, subdivision (a)(5)]," including the identities of tribes in which the child could be a member or eligible for membership, as well as biographical and contact information for the child and his or her biological parents, grandparents, and great-grandparents. (§ 224.2, subd. (e)(2)(A); see § 224.3, subd. (a)(5); Cal. Rules of Court, rule 5.481(a)(4)(A).)

"The continuing duty to inquire whether a child is or may be an Indian child 'can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.'" (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552, quoting *In re D.F.* (2020) 55 Cal.App.5th 558, 566; see also *In re Charles W.* (2021) 66 Cal.App.5th 483, 489.)

In addition to the duty of initial inquiry, there is a continuing duty to determine whether ICWA applies, and a juvenile court must revisit a prior determination that ICWA does not apply "if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c); see Cal. Rules of Court, rule 5.481(a); *Isaiah W., supra*, 1 Cal.5th at pp. 10–11.) However, if there are no changes in the parents' information, the "Agency is not required to 'cast about' for information or pursue unproductive investigative leads." (*In re D.S., supra,* 46 Cal.App.5th at p. 1053; see also, *In re Charles W., supra,* 66 Cal.App.5th at p. 491.) Further, the Department must document the inquiries. (Cal. Rules of Court, rule 5.481(a) (5).)

13

B.    ***Initial Inquiry Respecting A.G and C.G.***

Because A.G. and C.G. have different fathers with different backgrounds, we discuss each separately.

1. *A.G.*

As to A.G., the record of the present proceeding demonstrates that R.G. orally informed the Department before the initial hearing that he did not think he had Indian ancestry, provided this information in open court at the initial hearing, and later executed an ICWA-020 statement to that effect. R.G.'s parents were asked and similarly denied any Indian heritage. The duty of initial inquiry as to possible Indian ancestry through A.G.'s father has been satisfied and the record reflects the social worker continued to inquire about Indian affiliation throughout the dependency.

More importantly, the minor A.G. was involved in the previous dependency, where the court duly made an initial inquiry and determined ICWA did not apply at multiple hearings. Further, the current dependency petition was accompanied by an attachment (form ICWA-010) and indicated that an inquiry was made and there was no known Indian heritage. Regarding the possibility A.G. has Indian ancestry through his paternal line, the duty of inquiry was discharged and there was no reason to believe eligibility for tribal membership could be found through the father or his relatives.

As for A.G.'s possible Indian heritage through mother's lineage, we note that she denied Indian ancestry in an ICWA-020 form, in which she stated, "none of the above apply." The record is silent, however, on the question of whether either the court or the

14

Department ever asked the maternal grandparents if they had Indian ancestry, although the inclusion of information about maternal relatives on the ICWA-030 notices sent on behalf of C.G. suggests that the Department did make an inquiry in order to obtain this detailed information. The information in the ICWA notice reflect that the maternal grandmother was born in Mexico, making it unlikely she has American Indian heritage. Mother's father was born in California, but no tribal affiliation was disclosed. Despite the strong suggestion of a current inquiry of maternal relatives, we are not prepared to make an implied finding.

Nevertheless, because A.G. was previously the subject of a dependency, the current dependency was not A.G.'s or his family's "initial contact." A.G.'s initial contact occurred in the prior proceeding, in which an initial inquiry had been made. That case was terminated in 2017 and the record reflects that the court found ICWA did not apply at multiple hearings. Mother again denied Indian tribal affiliation in the present case. However, the record does not clearly reflect whether the Department made inquiry of the maternal grandparents, despite their active involvement in both dependency actions.

Section 224.2 specifies it comes into play at "the initial contact." Having made initial inquiry, "further inquiry" is not required unless new or different information was discovered. The findings that ICWA did not apply were previously made respecting this child and no new or different information was presented in the current appeal, where the maternal grandparents provided biographical information included in the ICWA notices sent with respect to C.G.'s possible Indian tribe affiliation.

15

We do not necessarily consider the ICWA findings in the prior proceedings dispositive, any more than a previous determination that the minor's *siblings* are not Indian children under the Act is not dispositive of another minor's Indian status. (*In re Jonathan D.* (2001) 92 Cal.App.4th 105, 111.) But here the previous determination related to the same minor who was the subject of two separate proceedings, with the same parents who each denied Indian ancestry then, as well as now. We might presume the duty of initial inquiry was satisfied in the prior dependency as to this minor.

Nevertheless, because section 224.2 imposes a continuing duty to inquire about Indian ancestry of relatives, this may constitute error because the record does not document any inquiry made of the maternal grandparents, despite the Department's ongoing contact with them. The only question is whether this error, if any, requires a limited remand.

2. *C.G.*

As to C.G., the record demonstrates that C.G.'s father, B.G., indicated possible Indian ancestry, leading the court to find a reason to believe C.G. might be an Indian child and that ICWA may apply. The record reflects the Department inquired of the paternal grandparents and sent notices to the Cherokee tribes, the SOI, and the BIA, which included detailed information about the maternal parents and grandparents as well as the paternal grandparents.

As to the paternal grandparents, the form indicates possible Cherokee ancestry through the paternal grandfather. As to the mother of C.G., the form reflects the maternal

16

grandmother was born in Mexico and that information regarding tribal or band affiliation "does not apply." The maternal grandfather was born in California, but the same notation "does not apply," is entered on the line reserved for identifying possible tribal or band affiliation. After notices were served on the tribes, the SOI and the BIA, the tribes informed the Department and the court that the child was not an Indian child nor eligible for membership. Thereafter, the trial court then found that ICWA did not apply.

The record does not affirmatively show the maternal grandparents were asked about possible American Indian ancestry respecting C.G. so it is possible no initial inquiry was made regarding possible Indian ancestry of mother and maternal relatives. Yet, mother's mother was born in Mexico, so it is unlikely there would be new information requiring further investigation of possible American Indian ancestry. As to the maternal grandfather, the record again does not reflect a current inquiry of him in the current dependency, although the same notation "does not apply" appears on the space for designating possible Indian heritage.

In any event, in the interest of proper compliance with an important statutory goal, we determine that there is insufficient record of initial inquiry as to possible Indian ancestry through the maternal line, although mother had denied Indian heritage in the previous dependency action and continued to deny any Indian ancestry, such that there is no reason to believe C.G. might have Indian heritage from her mother's relatives. The only remaining question is whether this requires a limited remand.

17

C. *Whether Any Failure to Inquire of Relatives Requires Remand.*

Recently, a plethora of rules for review and tests for prejudice have been the subject of many decisions, the majority of which exist along a continuum. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 777, citing *In re A.C.* (2022) 75 Cal.App.5th 1009, 1011.) When there were only three tests, the rule at one end of the continuum mandated reversal where the Department's initial inquiry is deficient, such that the defect necessarily infects the juvenile court's ICWA finding and reversal is automatic and required (the "automatic reversal rule"). (*In re Dezi C., supra,* at p. 777, and numerous cases cited therein.) "Under this test, reversal is required no matter how 'slim' the odds are that further inquiry on remand might lead to a different ICWA finding by the juvenile court." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 435.)

The rule at the other end of the continuum is one that presumptively favors affirmance. In such a case, where the Department's initial inquiry is deficient, that defect will be treated as harmless unless the parent comes forward with a proffer on appeal as to why further inquiry would lead to a different ICWA finding (the "presumptive affirmance rule"). (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1065, 1075; see also, *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430–1431.)

The third rule lies somewhere between those two opposing poles of the first two rules, where the Department's initial inquiry is deficient, but "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child" and that "the probability of obtaining meaningful

18

information is reasonable" ("the readily obtainable information rule"). (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744; see also *In re Darian R*. (2022) 75 Cal.App.5th 502, 509–510; *In re S.S.* (2022) 75 Cal.App.5th 575, 581–583.)

The fourth rule was provided by the reviewing court in *In re Dezi C., supra,* referred to as the "reason to believe rule." (*In re Dezi C., supra,* 79 Cal.App.5th at p. 779.) Under this test, an agency's failure to conduct a proper initial inquiry into a dependent child's Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an "Indian child" within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding. (*Ibid.*) However, the statute's requirement of further inquiry is determined by whether there is a reason to believe the child is an Indian child. Framing a standard of review in the language of the conclusion to be drawn does not appear efficacious.

Then, a fifth test emerged from the recent decision in *In re Ezequiel G.* (2022) 81 Cal.App.5th 984 (*Ezequiel G.*), in which the reviewing court proposed a hybrid substantial evidence/abuse of discretion standard. (*Id.,* at p. 1004.) We note that those are standards of review rather than standards of prejudice, so the utility of those tests is less than optimal in determining if reversal is required.

Plainly, determining whether ICWA error occurred, or, if it did, whether it requires reversal, has gotten lost in a maze of incoherent approaches. We have determined that the trial court and the Department have failed to discharge the duty of

19

initial — and continuing — inquiry where the record fails to reflect the maternal grandparents. As our court has previously held, in ICWA cases, a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child. (*In re Benjamin M., supra*, 70 Cal.App.5th at p. 744.) We adopt that approach here. The maternal grandparents are readily available so the relevant information is readily obtainable.

We will therefore conditionally reverse the judgment and direct the Department to conduct the mandatory inquiry of the maternal grandparents or other readily available maternal relatives having relevant information about possible Indian heritage, and document the results of that inquiry.

## DISPOSITION

The order terminating parental rights to A.G. and C.G. is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and of sections 224.2 and 224.3 (and, if applicable, the notice provisions as well), consistent with this opinion. If, after completing the initial inquiry, neither DPSS nor the court has reason to believe or to know that A.G. or C.G. is an Indian child, the order terminating parental rights to both children shall be reinstated.

If DPSS or the court has reason to believe that A.G. or C.G. Benjamin is an Indian child, the court shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

FIELDS
J.