Filed 6/3/25  In re Abigail T. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re ABIGAIL T. et al., Persons Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TARA G.,<br><br>    Defendant and Appellant. | F088315<br><br>(Super. Ct. Nos. 22JP-00027-B, 22JP-00027-C)<br><br><br>**OPINION** |

**THE COURT**[*]

APPEAL from orders of the Superior Court of Merced County.  James LaPorte, Judge.

Elaine Forrester, under appointment by the Court of Appeal, for Defendant and Appellant.

Forrest W. Hansen, County Counsel, and Jennifer Tran, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Detjen, Acting P. J., Franson, J. and De Santos, J.

Tara G. (mother) appeals from the orders rendered on June 20, 2024, in dependency proceedings terminating her parental rights to her children Abigail and Penelope, pursuant to Welfare and Institutions Code section 366.26[1] contending reversal is required due to noncompliance with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). Respondent makes some concessions to mother's allegations and contends a conditional reversal is required. As we explain below, we reverse the orders and remand for compliance with the ICWA.

**STATEMENT OF THE CASE AND FACTS**

Because mother raises only ICWA issues, we limit our background discussion to a brief sketch of the proceedings which brought the family into dependency.[2] We set out a more detailed timeline of ICWA proceedings.

On February 25, 2022, the Merced County Human Services Agency (agency) filed a section 300 petition alleging S.G., Abigail and Penelope[3] fell within the provisions of subdivision (b) due to mother's untreated substance abuse, mental health issues, a domestic violence history which exposed her children to domestic violence, and issues relating to supervision of her children. A previous dependency case in 2019 involving S.G. and Abigail had similar issues of drug use, an unsanitary home, untreated mental

---

**1** All further statutory references are to the Welfare and Institutions code unless otherwise stated.

**2** We summarize the facts pertaining to the dependency case from our unpublished denial of mother's writ petition (*T.G. v. Superior Court* (Dec. 12, 2024, F086994) [nonpub. opn.]). We separately add references to ICWA issues now raised on appeal that mother, as a pro. per., did not argue in her writ petition.

**3** O.G. and Michael S. were both listed as alleged fathers of S.G. Mother had been previously married to O.G., but they separated in 2004 and finalized their divorce in 2020; O.G. and Kyle T. were both listed as alleged fathers to Abigail; Jose R. (who was still married to mother) was listed as the alleged father of Penelope. During the pendency of the case, Kyle T. was determined to be the presumed father of Abigail and Jose R. the presumed father of Penelope. None of the fathers nor S.G. were parties to the earlier writ petition or are parties to this appeal.

health issues, as well as domestic violence between mother and Kyle T. Mother later reunified and was given custody of S.G. and Abigail.

Concurrent with the filing of the section 300 petition on February 25, 2022, the agency filed an ICWA-010(A) form stating that the social worker had asked mother and Kyle T. about Abigail's Indian status and was given reason to believe that she was or may be an Indian child. The ICWA-010(A) forms for Penelope and S.G. stated that the social worker had asked mother about their Indian status and mother gave no reason to believe that either Penelope or S.G. was or might be an Indian child.

Attached to the petition was a statement from social worker Marina Lyon that a letter had been received from the Cherokee Nation in the earlier 2019 dependency proceeding stating that Abigail could be traced in their tribal records, but an application for membership would need to be filed. The statement further stated that Lyon contacted the Cherokee Nation of Oklahoma on February 25, 2022, to inquire about potential ICWA status of Abigail. Lyon was told that Abigail was not currently an Indian child, but she could apply, through the lineage of her parental grandmother, who was enrolled.

At the initial detention hearing February 28, 2022, the juvenile court took judicial notice of the earlier dependency case in which it found ICWA applied to Abigail and Kyle T. Kyle T. told the court he had DNA proof Abigail was his daughter. The court made ICWA inquiry of mother, who stated she did not believe she had any Native American ancestry and did not believe Jose R. had either. Detention for Abigail was continued for a contested hearing.

Kyle T. and paternal grandmother, Cheryl T., were present at the March 1, 2022, detention hearing for Abigail. Abigail was detained and ordered placed into foster care. Noting mother and Kyle T.'s requests for placement with relatives, the agency was told to work "with the parent to find relatives or close friend who were willing to take placement of the children." Kyle T. stated that his mother, Cheryl T., was willing to take Abigail

3.

immediately, but it was noted that was not possible as Kyle T. was currently living with Cheryl T.

The children were detained and jurisdiction and disposition set for April 6, 2022.

A letter dated March 23, 2022, from the Cherokee Nation was filed on March 28, 2022, stating that Abigail could be traced in tribal records through Cheryl T., but that she was not an Indian child at this time. The letter further stated that, if "all parties wish for the child/children to become an enrolled tribal citizen," the enrollment application could be found on its website.

On March 23, 2022, the agency filed an ICWA-030 form for Abigail, which was mailed to the parents, the Bureau of Indian Affairs (BIA), and the Cherokee Nation in Tahlquah, Oklahoma on March 17, 2022.

Subsequent amended petitions were filed, one which alleged Abigail's father, Kyle T., had failed to protect Abigail from exposure to repeated domestic violence between mother and Kyle T, and another alleged mother and S.G.'s alleged father, O.G., had two prior dependency cases involving the minors' confidential half sibling. In one case, reunification services were terminated and the minor placed in guardianship; in the other, the parents were bypassed for services.

On April 6, 2022, Jose R., Penelope's father, made his initial appearance by phone and stated he had no known Indian heritage. Mother told the juvenile court that Jose R.'s cousins were willing to take both Abigail and Penelope.

At the jurisdiction/disposition hearing April 20, 2022, mother waived her right to a contested hearing on the dual question of jurisdiction and disposition, denied allegations in the jurisdiction/disposition report, and submitted on the agency's recommendation to receive family reunification services. The juvenile court found that the children were not placed with relatives as "[t]here have been no relatives who have come forward to consider for placement."

4.

The juvenile court found the children came within the provisions of section 300, and mother was offered reunification services. A six-month review hearing was scheduled for October 5, 2022.

On September 12, 2022, social worker Shelly Booker contacted Traci Willie of the Cherokee Nation and confirmed Abigail was eligible for membership with the Cherokee Nation. Booker declared she would "begin the application process on behalf of … [Abigail]."

On September 21, 2022, Kyle T. completed an ICWA-020 form stating that he is or may be a member of or eligible for membership in the Cherokee Nation, Eastern Band, Keetowa, Oklahoma; that Abigail is or may be eligible for membership in the Cherokee Nation; and that one or more of his parents, grandparents, or other lineal ancestors is or was a member of the Cherokee, Eastern Band, Keetowa, Oklahoma, and specifically identified paternal grandmother Cheryl T. and great-grandfather Charles T.

At the scheduled six-month review hearing October 5, 2022, Kyle T. stated again that Cheryl T. wished to have Abigail placed with her. Mother objected to placement with paternal grandmother.

Cherokee Nation representative Willie was present. When asked if she had any questions. concerns or comments, she stated

> "I do not, your Honor – I believe the only thing that I can say is that neither the child or either parent are currently enrolled tribal citizens; that the Indian Child Welfare Act does not apply to this case today. But I believe [Kyle T.'s] enrollment – tribal enrollment application is in process, though, that may happen fairly soon. I just don't know when."

The review hearing was continued to October 20, 2022.

On October 14, 2022, Jose R. reported he did not have any Native American heritage.

At the October 20, 2022, six-month review hearing, mother waived her right to a contested hearing, denied all allegations, and submitted on the agency's recommendation

5.

to continue family reunification services. ICWA representative Willie told the juvenile court again that. since Kyle T. and Abigail were not enrolled tribal citizens, ICWA did not apply "today," but it would apply "at some point." The 12-month review was scheduled for April 6, 2023.

On January 24, 2023, ICWA representative Willie sent a letter to the agency stating that the Cherokee Nation had examined its records and determined that Abigail was an Indian child through Kyle T. as defined by ICWA, and that "This determination mandates all safeguards pertaining to children under this Act be applied to these particular children."

At the review hearing April 20, 2023, which was again continued as the agency had not completed a report, the juvenile court stated that, according to its notes, representative Willie indicated that Abigail and Penelope were not eligible "for placement or membership" with the Cherokee Nation. The juvenile court found ICWA did not apply.

The 12-month review hearing was eventually held on June 22, 2023, at which time reunification services were continued for mother, Kyle T. and Jose R. At that time, the juvenile court found ICWA did not apply to Jose. R. An 18-month review hearing was set for August 10, 2023, but not held until October 10, 2023.

In the interim, on August 31, 2023, the juvenile court inquired of Kyle T. again whether he had Native American ancestry on his mother or father's side. Kyle T. stated that he did, as did paternal grandmother Cheryl T., who was also present and stated she did also. The juvenile court then looked back on the record of the case and stated the following:

> "In December of 2019, the Court found that the Indian Child Welfare Act does apply to Father, Kyle T[.] and Abigail.And the Cherokee tribe is the Native-American child's tribe.All tribes were notified.A response from the Cherokee Nation, March 2022, stated that Abigail is not an Indian child; therefore, the nation does not have standing to intervene. [¶] On October

6.

15, 2022, social worker contacted the Cherokee Nation on behalf of Abigail and requested documents needed to apply for membership. January 2023, Cherokee Nation stated that the Indian Child Welfare Program will be staffing the case. May of 2023, social worker confirmed Cherokee Nation that the tribe determined, April 24, 2023, they would not be intervening at this time. Formal request for that communication was made. Cherokee Nation decline to provide official confirmation when they do not become involved. [¶] So the Cherokee Nation was notified."

Kyle T.'s counsel stated that she was just informed that Kyle T. was officially enrolled in the Tribe on December 26, 2023. The case was continued to allow the agency to complete its report, but also to follow up with the Cherokee Nation to see if they wanted to intervene now that Kyle T. was enrolled.

At the contested 18-month review hearing October 10, 2023, the juvenile court, in its ruling, found mother had made "all kinds of great progress getting herself in order," but that it was concerned about the children. The court found the children were not doing well, citing S.G.'s serious problems, as well as the comments and behavior of Abigail and her allegations of sexual abuse, "that Mother delayed reporting for some period of time," which the juvenile court characterized as "very concerning." The juvenile court found the children were "lagging behind in the relationship" with mother, even though mother had visited consistently. Despite the efforts to reunify, the court found relationship and connection with mother was absent. The court also noted mother's lack of stable housing and her night shift work schedule and issues that created for the childcare. Due to concerns for the safety of the children, the juvenile court found that it could not return the care and custody of the children to mother under a family maintenance plan. After finding a substantial risk of detriment for reasons set forth in the evidence and argument, the juvenile court terminated reunification services for mother, Kyle T. and Jose R., and set a section 366.26 hearing for February 1, 2024.

On November 13, 2023, Kyle T. told social worker Pang Moua that he was enrolled with the Cherokee tribe.

7.

On February 1, 2024, Kyle T. provided the agency with copies of his and Cheryl T.'s enrollment cards showing his enrollment date in the Cherokee Tribe as November 15, 2022, and Cheryl T.'s enrollment date as September 23, 1982.

On February 14, 2024, Social Worker Moua spoke with Amanda Neugin at the Cherokee Nation, who said Abigail was eligible for citizenship in the tribe and, that while the tribe determined the child was an Indian child, it had chosen not to participate in court proceedings. It requested that the agency apply for tribal citizenship on Abigail's behalf and that Kyle T. needed to complete part of the application.

On February 15, 2024, the agency gave notice of child custody proceedings and ICWA-030 forms to the Cherokee Nation and BIA concerning the upcoming section 366.3 hearing then scheduled for February 29, 2024, as to Abigail.

On February 20, 2024, the social worker provided Kyle T. with a sworn statement affidavit to be completed and returned to the Cherokee Nation Registration Department stating he was Abigail's biological father. The form was completed and notarized on February 27, 2024.

On March 13, 2024, mother reported to Social Worker Moua that she had Blackfeet heritage through her maternal lineage. The social worker completed an ICWA-030 form, this time listing both Abigail and Penelope. It was mailed to the BIA, Blackfeet tribe and mother.

On March 28, 2024, Kyle T. and Cheryl T. were both present in court for the now rescheduled section 366.26 hearing. Kyle T. stated that he wanted more visits which did not seem to be forthcoming. The agency stated that delay was on account of Kyle T.'s declaration of Indian heritage and the need to follow up on ICWA information before it could finalize a section 366 26 report. The juvenile court "translate[d]" for Kyle T., stating that, when Kyle T. said he had Indian heritage, the agency had to follow up on that information, which was not a "quick process either for the agency or the tribe."

8.

The section 366.26 hearing was not held until June 20, 2024. The agency submitted on its section 366.26 report and attachments. The section 366.26 report stated that the legal clerk had received an e-mail from the Cherokee Nation on April 2, 2024, stating, "Cherokee Nation will not file a Notice of Intervention into the Abigail [T.] case as reported to Tisa Baker April 2023." The agency's report also stated that, as of April 2, 2024, ICWA was still being determined as there had been no reply from the Blackfeet tribe regarding Abigail or Penelope.

The agency attached its proposed order to the report, asking that the court find notice had been given as required by law; that mother, Kyle T. and Jose R.'s parental rights be terminated; and that the juvenile court find, by clear and convincing evidence, that it was likely the children would be adopted. The order left blank the box that could be checked if the case involved an Indian child. It also left blank the box that could be checked stating: "The child is an Indian child, and active efforts, as detailed in the record ☐were ☐were not made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family. If active efforts were made, those efforts have proved ☐successful ☐unsuccessful." The juvenile court stated it would make the findings as listed on the proposed order, but there is no signed order in the record. The minute order from the hearing states that the order "is to be submitted by the Agency Ex-Parte." The minute order also states: "The court finds by clear and convincing evidence the recommendations are approved as set forth in the report."

This appeal followed.

## DISCUSSION

### *Failure of ICWA Compliance as to Abigail*

Mother asks for reversal of the juvenile court's order terminating her parental rights, citing various claims of noncompliance with the ICWA as it relates to Abigail. Respondent concedes certain error occurred and that the case must be conditionally remanded to comply with ICWA. We agree with mother, however, as to the reversal of

the section 366.26 order terminating her and Kyle T.'s parental rights, as we explain below.

"Congress enacted ICWA over 40 years ago to address ' "abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." ' [Citation.] ... As a result, ICWA's express purpose is 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.' " (*In re K.T.* (2022) 76 Cal.App.5th 732, 740.) In short, ICWA's aim is that, where possible, an Indian child should remain in the Indian community. (*In re W.B.* (2012) 55 Cal.4th 30, 48.)

"When ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding. (25 U.S.C. § 1911.) If the tribe does not assume jurisdiction, the state court must nevertheless follow various heightened procedural and substantive requirements, such as stricter removal standards and mandatory placement preferences that promote keeping Indian children with family members or members of their tribe. (25 U.S.C. § 1912(f).)" (*In re K.T., supra,* 76 Cal.App.5th at p. 741.) "Violations of ICWA ' "render[ ] the dependency proceedings, including an adoption following termination of parental rights, vulnerable to collateral attack if the dependent child is, in fact, an Indian child." ' " (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741, disapproved on other grounds in *In re Dezi C.* (2024) 16 Cal.5th 1112, 1136.)

"Indian child" is a defined term under ICWA: it means "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) ... eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).)

10.

It is clear from the record that Abigail is an Indian child.[4] The record before the juvenile court was that the agency received a letter on January 24, 2023, from ICWA Representative Willie that the Cherokee Nation had examined its records and determined that Abigail was an Indian child through Kyle T. as defined by ICWA, and that "This determination mandates all safeguards pertaining to children under this Act be applied to these particular children." And yet, the juvenile court found ICWA inapplicable. This was error.

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards." (*In re Dezi C., supra,* 16 Cal.5th at p. 1129; see 25 U.S.C. §§ 1902, 1921; *In re Y.W.* (2021) 70 Cal.App.5th 542, 551; *In re T.G.* (2020) 58 Cal.App.5th 275, 287.) And ICWA expressly yields to state laws that provide "a higher standard of protection to the rights of the parent or Indian custodian of an Indian child ...." (25 U.S.C. § 1921; Welf. & Inst. Code, § 224, subd. (d).)

ICWA significantly limits state court actions concerning out-of-family placements or termination of parental rights for Indian children.

> "When ICWA applies, a state court may not, for example, make a foster care placement of an Indian child or terminate parental rights to an Indian child unless the court is satisfied 'that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.' (25 U.S.C. § 1912(d); Welf. & Inst. Code, § 361.7, subd. (a); see *In re K.B.* (2009) 173 Cal.App.4th 1275, 1288 ['Active efforts required by ICWA are "timely and affirmative steps …to remedy problems

---

[4] Mother makes an argument that Abigail's Indian status need not be relitigated in the current dependency because she had been found to be an Indian child in an earlier dependency proceeding. We need not address mother's doctrine of issue preclusion argument, as it is very clear from the record of the current dependency that Abigail is an Indian child.

which might lead to severance of the parent-child relationship." ' ].  Prior to placing an Indian child in foster care, the court must also make 'a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.' (25 U.S.C. § 1912(e); see Welf. & Inst. Code, § 361.7, subd. (c).) " (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882, disapproved on other grounds in *In re Dezi C., supra,* 16 Cal.5th at p. 1152, fn. 18.)

Section 224.1, subdivision (f)(1)-(11) describes " '[a]ctive efforts' " as including conducting a comprehensive assessment of the circumstances of the Indian family, identifying appropriate services and helping the parents overcome barriers.  California Rules of Court, rule 5.485(c) provides:

> "In addition to any other required findings to place an Indian child with someone other than a parent or Indian custodian, or to terminate parental rights, the court must find that active efforts have been made, in any proceeding listed in rule 5.480, to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, and must find that these efforts were unsuccessful.  These active efforts must include affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite the child with his or her family, must be tailored to the facts and circumstances of the case, and must be consistent with the requirements of Welfare and Institutions Code section 224.1(f).

> "(1)    The active efforts must be documented in detail in the record.

> "(2)    The court must consider whether active efforts were made in a manner consistent with the prevailing social and cultural conditions and way of life of the Indian child's tribe.

> "(3)    Active efforts to provide services must include pursuit of any steps necessary to secure tribal membership for a child if the child is eligible for membership in a given tribe, as well as attempts to use the available resources of extended family members, the tribe, tribal and other Indian social service agencies, and individual Indian caregivers."

ICWA also sets out placement priorities for Indian children.  If a child is found to be an Indian child, then the statutorily preferred pre-adoption placement for the child is

with extended family. (25 U.S.C. § 1915(b)(i).) In regard to adoption for the Indian child, Section 1915 of title 25 of the United States Code provides that in any adoptive placement of an Indian child under state law, "a preference shall be given, in the absence of good cause to the contrary, to a placement with [¶] (1) a member of the child's extended family; [¶] (2) other members of the Indian child's tribe; or [¶] (3) other Indian families." (25 U.S.C. § 1915(a).) Extended family under ICWA includes grandparents. (25 U.S.C. § 1903(2).)

Respondent acknowledges that Abigail was eligible for membership with the Cherokee Tribe and that it is unclear whether or not the agency applied for her tribal membership. Respondent also acknowledges that it is unclear whether the agency made any efforts to comply with the ICWA pre-adoptive placement preferences. As such, respondent asks that we conditionally reverse the juvenile court's ICWA finding and remand the matter with instructions ordering the agency to comply with the ICWA provisions, and, if after adequate inquiry the juvenile court finds that ICWA does apply, that the juvenile court then vacate its existing order and proceed in compliance with ICWA and related California law.

However, the record here is clear that ICWA does apply to Abigail through Kyle T. and the juvenile court's finding that ICWA does not apply is reversed. Having found ICWA inapplicable, the juvenile court did not consider the ICWA requirements before terminating parental rights. (See 25 U.S.C. § 1912(d), (f); *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 339.) Accordingly, the order terminating parental rights must be reversed and the matter remanded for a new section 366.26 hearing in compliance with ICWA. (*Jonathon S.,* at pp. 342-343; *In re Jonathan D.* (2001) 92 Cal.App.4th 105, 111; see *In re Francisco W.* (2006) 139 Cal.App.4th 695, 709-711.)

We recognize our decision further delays permanency for Abigail, "but cannot conclude that the prospect of such a delay excuses noncompliance at the expense of those that ICWA is intended to protect." (*In re Alice M.* (2008) 161 Cal.App.4th 1189, 1197.)

13.

We urge the juvenile court and the parties to expedite resolution of these proceedings on remand.

*Failure of Adequate ICWA Inquiry as to Mother's Possible Blackfeet Heritage*

Mother contends reversal of her parental rights and remand is also required because the agency failed to comply with inquiry duty regarding mother's possible Native American ancestry with the Blackfeet tribe. While mother initially stated she had no known Native American ancestry, on March 13, 2024, mother told social worker Muoa that she had Blackfeet heritage through her maternal line. Mother was not enrolled in the tribe and did not know if maternal grandmother had been a registered member. Social worker Muoa completed a second amended ICWA-030 form which was sent to the BIA and Blackfeet Tribe on March 21, 2024. The BIA received the form on March 25, 2024, and the Blackfeet Tribe received the form on April 2, 2024.

However, as acknowledged by respondent, it is unclear whether the BIA or Blackfeet Tribe provided a response. Nor is there anything in the record to indicate that any maternal relatives were asked about their Indian ancestry. And yet, the juvenile court found ICWA inapplicable to both Abigail and Penelope.

The court may find that ICWA does not apply to a proceeding, if it finds "that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child ...." (§ 224.2, subd. (i)(2).)

In the case at hand, the record reflects that the agency either did not inquire of anyone beyond mother as to any Blackfeet heritage, or did so but neglected to document the inquiries and responses received. (Cal. Rules of Court, rule 5.481(a)(5); see Welf. & Inst. Code, § 309, subd. (e).) While mother did not provide much information suggesting Abigail or Penelope may be Indian children through her lineage, the law demands more than merely inquiring of mother, as respondent readily concedes. (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431.) The nature of this defect left the juvenile court with no

14.

evidence upon which to exercise discretion to find the inquiry proper, adequate, and duly diligent. As the principles articulated in *In re A.R.* (2021) 11 Cal.5th 234 illustrate, this error is necessarily prejudicial because, limited only to the parents, the inquiry fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law, and remand for correction is required. (*A.R., supra,* at pp. 252-253.)

Accordingly, the juvenile court's finding that ICWA does not apply as to mother's Native American heritage is conditionally reversed, and this matter is remanded. On remand, the juvenile court shall direct the agency to conduct a proper, adequate, and duly diligent inquiry under section 224.2, subdivision (b), and notice requirements under section 224.3 and document its inquiry in the record in compliance with California Rules of Court, rule 5.481(a)(5). This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of mother's. We leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the agency. So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (i)(2).)

## DISPOSITION

The order terminating parental rights for mother and Kyle T. is reversed and the matter remanded to the juvenile court with instructions to conduct a new section 366.26 hearing in conformity with the provisions of ICWA and applicable state law.

The juvenile court's order terminating mother and Jose R.'s parental rights is conditionally reversed. The matter is remanded to the juvenile court for compliance with the inquiry and notice requirements of Welfare and Institutions Code sections 224.2 and 224.3 and the documentation provisions of California Rules of Court, rule 5.481(a)(5). If the court thereafter concludes that ICWA does not apply, then it shall immediately

15.

reinstate the order terminating mother and Jose R.'s parental rights. If the court concludes that ICWA applies, the court shall proceed in conformity with ICWA and related California law.